JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

The victim knew both defendant and his partner and recognized them as the men who had robbed him. The police found defendant near the crime scene with a mask in the back of his vehicle. Defendant's own mother led police to the loaded .45 caliber pistol used to commit the robbery. Simply put, a rational jury would have convicted defendant even without the pretrial identification and incriminating statements defendant sought to suppress. Ordering a new trial for a benign violation of an arcane rule serves no rational purpose and taxes already overworked trial courts whose energies would be better spent trying new cases rather than retrying old ones.

The majority claims the out-of-term, out-of-session rule serves the interests of "uniformity, stability and fairness in criminal prosecutions." If so, its virtues as applied to the instant case are difficult to discern. Today this Court grants a new trial to a man convicted of a violent crime in a prior trial free from prejudicial error. This result advances neither the ends of justice nor the public good.

For the foregoing reasons, I respectfully dissent.

═══════════

JONESBORO UNITED METHODIST CHURCH, AN UNINCORPORATED ASSOCIATION V. MULLINS-SHERMAN ARCHITECTS, L.L.P. AND J.H. BATTEN, INC., A NORTH CAROLINA CORPORATION

No. 170PA04

(Filed 1 July 2005)

### Pleadings— compulsory counterclaims—failure to assert bars claims

The trial court erred in a breach of contract, breach of express and implied warranty, and negligence/malpractice action filed in Lee County arising out of the construction of a fellowship hall addition for a church by denying defendant general contractor's motions for judgment on the pleadings, because: (1) a party who does not plead a compulsory counterclaim is, after determination of the action in which it should have been pleaded, forever barred from bringing a later independent action on that claim; (2) plaintiff's pleadings in the Forsyth County action demonstrated that plaintiff was aware of the factual basis for its Lee County claims at the time it filed its responsive pleadings during the Forsyth County litigation; (3) all three of the factors under

594 IN THE SUPREME COURT

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

*Curlings v. Macemore*, 57 N.C. App. 200 (1982) suggest that plaintiff's claims against defendant in the Lee County litigation should have been raised as compulsory counterclaims in the Forsyth litigation when defendant's claims in the Forsyth County litigation and plaintiff's claims in the Lee County litigation have the issues of law and fact largely the same in both actions, require substantially the same evidence for their determination, and are logically related; (4) N.C.G.S. § 1A-1, Rule 13(a) does not require that the legal claims be identical, and it is sufficient that the nature of the actions and the remedies sought are logically related in fact and law; and (5) to permit plaintiff to bring its claims in such a manner would subject defendant and our courts to the unnecessary delay and expense of repeated fragmentary litigation and would undermine the salutary principle of judicial economy upon which Rule 13(a) is premised.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 162 N.C. App. 547, 591 S.E.2d 598 (2004), affirming an order denying defendant J.H. Batten, Inc.'s motions for judgment on the pleadings entered 30 August 2002 by Judge Wiley F. Bowen in Superior Court, Lee County. Heard in the Supreme Court 6 December 2004.

*Safran Law Offices, by Perry R. Safran and Brian J. Schoolman, for plaintiff-appellee.*

*Nexsen Pruet Adams Kleemeier, PLLC, by Eric H. Biesecker, for defendant-appellant J.H. Batten, Inc.*

MARTIN, Justice.

On 4 October 1999, defendant J.H. Batten, Inc. (Batten) entered into a contract (the construction contract) with plaintiff Jonesboro United Methodist Church (JUMC) whereby Batten agreed to act as general contractor for the construction of a Fellowship Hall addition on real property owned by JUMC in Sanford, North Carolina. According to allegations in JUMC's complaint, JUMC had concerns about Batten's workmanship throughout the construction project. Instances of Batten's allegedly poor workmanship included problems relating to the alignment and ventilation of the roof, the puckering of roof shingles, defects in the mortar joints and masonry work, mislocated purlins, missing insulation, and other matters. During and after construction, disputes arose between JUMC and Batten concerning

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

both parties' respective performances under the contract. The disputes centered around the balance owed for work performed, the completion of punch list items, and whether Batten was required to perform additional work under the terms of the contract or in satisfaction of warranties. The parties entered mediation in an effort to resolve these disputes.

On 6 August 2001, representatives of JUMC sent Batten a letter by facsimile transmission confirming a prior telephone agreement in which JUMC agreed to pay $101,000.00 to "satisfy the construction relationship" between JUMC and Batten. The letter thanked Batten for its "willingness to help us settle this today" and invited Batten to indicate its approval of the settlement agreement by signing and returning the letter by facsimile transmission. That same day, Batten's managing agent, Harold Batten, signed the letter and returned it as requested to JUMC. At the bottom of the page, Batten wrote, "I agree that this is a complete settlement between [Batten] and [JUMC]."

On 14 August 2001, JUMC sent Batten another letter by facsimile transmission. The second letter stated that upon further review, JUMC "disagree[d] on the amount of payment outstanding." On this basis, the letter purported to "rescind[]" the 6 August 2001 settlement offer.

After JUMC refused to pay the amount specified in the 6 August 2001 letter, Batten filed suit in Forsyth County Superior Court on 16 August 2001, seeking $101,000.00 in damages in satisfaction of the settlement agreement. In the event the trial court determined there was not a binding settlement agreement, Batten sought a declaratory judgment "to declare the relative rights and obligations between the parties pursuant to the Contract." In its answer, JUMC denied that a binding settlement existed and moved to dismiss, to change venue, and to stay the proceeding pending arbitration. JUMC further asserted numerous affirmative defenses, including unclean hands, anticipatory breach, and estoppel based on Batten's alleged failure to perform under the contract. JUMC did not file any counterclaims in the action. After some discovery, Batten filed a motion for summary judgment, which the trial court allowed on 6 February 2002.

JUMC appealed, and the Court of Appeals affirmed in an unpublished opinion filed 17 June 2003. The Court of Appeals concluded that the parties had entered a binding settlement contract and that no genuine issues of material fact remained to be litigated. JUMC filed a

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

petition for discretionary review, which this Court denied on 21 August 2003. *J.H. Batten, Inc. v. Jonesboro United Methodist Church*, 357 N.C. 460, 585 S.E.2d 765 (2003).

On 23 April 2002, less than three months after the trial court entered summary judgment in Batten's favor in the Forsyth County litigation, JUMC filed a complaint in Lee County. The complaint stated three claims against Batten: breach of contract, breach of express and implied warranty, and "Negligence/Malpractice." Batten filed its answer on 7 June 2002. On 3 July 2002 and 30 July 2002, Batten filed motions for judgment on the pleadings, which asked the trial court to dismiss JUMC's claims against Batten because those claims "ar[o]se from the same transaction or occurrence that was the subject of litigation between the parties in Forsyth County." The trial court denied the motions on 30 August 2002, and Batten appealed. The Court of Appeals affirmed in an unpublished opinion. We reverse.

Rule 13(a) of the North Carolina Rules of Civil Procedure designates certain claims as "compulsory counterclaims" that must be raised in responsive pleadings. Specifically, Rule 13(a) provides that

[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

N.C.G.S. § 1A-1, N.C. R. Civ. P. 13(a) (2003). A claim is not a compulsory counterclaim, however, if

(1) At the time the action was commenced the claim was the subject of another pending action, or

(2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

*Id.*; *see also* N.C. R. Civ. P. 13(a) cmt.

As we have previously noted, the ultimate effect of a pleader's failure to assert a compulsory counterclaim is not set forth in the rule itself. *See Gardner v. Gardner*, 294 N.C. 172, 176, 240 S.E.2d 399, 403 (1978). "Courts have, however, consistently held that a party who does not plead a compulsory counterclaim is, after determination of

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

the action in which it should have been pleaded, forever barred from bringing a later independent action on that claim." *Id.* at 179, 240 S.E.2d at 404. This preclusive effect is necessary to effectuate the purpose of Rule 13(a), which "is to enable one court to resolve 'all related claims in one action, thereby avoiding a wasteful multiplicity of litigation.' " *Id.* at 176-77, 240 S.E.2d at 403 (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1409, at 37 (1971)); *see also Kemp v. Spivey*, 166 N.C. App. 456, 458, 602 S.E.2d 686, 688 (2004); *Winston-Salem Joint Venture v. Cathy's Boutique, Inc.*, 72 N.C. App. 673, 675, 325 S.E.2d 286, 287 (1985); *Twin City Apartments, Inc. v. Landrum*, 45 N.C. App. 490, 494, 263 S.E.2d 323, 325 (1980). To permit a party who failed to assert a compulsory counterclaim to raise that claim in a later action undermines the "salutary procedural principle that litigation once precipitated ought to be concentrated insofar as practicable in one forum," thereby " 'destroy[ing] the effectiveness of Rule 13(a).' " *Gardner*, 294 N.C. at 179-81, 240 S.E.2d at 404-06 (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1417, at 94 (1971)). Accordingly, it is well settled that absent a specific statutory or judicially determined exception, *see id.* at 181, 240 S.E.2d at 406, a party's failure to interpose a compulsory counterclaim in an action that has been fully litigated bars assertion of that claim in any subsequent action. *Id.* at 179, 240 S.E.2d at 404; *see also Wood v. Wood*, 60 N.C. App. 178, 181, 298 S.E.2d 422, 423 (1982); *Hudspeth v. Bunzey*, 35 N.C. App. 231, 233, 241 S.E.2d 119, 121, *cert. denied*, 294 N.C. 736, 244 S.E.2d 154 (1978). *See generally* Restatement (Second) of Judgments § 22, at 185 (1982).

At the outset, we acknowledge that the compulsory counterclaim rule applies only to claims that are mature at the time the responsive pleading is filed. *See* N.C. R. Civ. P. 13(a) (stating that the rule applies to claims a party "has" against an opposing party "at the time of serving the [responsive] pleading"); *see also Country Club of Johnston Cty., Inc. v. United States Fid. & Guar. Co.*, 150 N.C. App. 231, 241, 563 S.E.2d 269, 276 (2002); 3 James W. Moore et. al, *Moore's Federal Practice*, ¶ 13.13, at 13-33 to 13-34 (3d ed. 2004). In the instant case, JUMC's complaint in the Lee County litigation asserted claims against Batten premised on (1) Batten's alleged breach of the construction contract, (2) Batten's alleged breach of express and implied warranties of good workmanship and (3) Batten's alleged negligence in "providing nonconforming and defective work" and failing to "perform [its] duties of construction in accordance with the standard of care for contractors in the community." A review of JUMC's pleadings

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

and the evidence of record demonstrates that these three claims, all of which are based on Batten's alleged failure to complete the construction project in a satisfactory manner, were available to JUMC at the time it filed its answer in the Forsyth County litigation.

In its answer to Batten's Forsyth County complaint, JUMC admitted Batten's factual allegation that "[c]ertain disputes [had] ar[isen] between Batten and JUMC regarding Batten's and JUMC's performance of the [construction] [c]ontract." In addition, JUMC set forth three affirmative defenses that expressly relied upon Batten's alleged noncompliance with the terms of that contract. Specifically, JUMC alleged that Batten (1) had "unclean hands with regard to its performance under [the construction contract]," (2) was "estopped from seeking damages . . . as [Batten] ha[d] not fully performed under its subcontract with [JUMC]," and (3) was "not entitled to recovery of any amounts owed by [JUMC]" due to "[Batten's] anticipatory breach of the contract." Similarly, in its Brief in Opposition to Plaintiff's Motion for Summary Judgment in the Forsyth County action, JUMC alleged that in addition to the dispute over the balance owed on the construction contract, "there were unresolved issues such as additional items of work to be performed under the [construction] contract, warranty work, and punch lists." Thus, JUMC's pleadings in the Forsyth County action demonstrate that JUMC was aware of the factual basis for its Lee County claims at the time it filed its responsive pleadings during the Forsyth County litigation.

Moreover, in its Lee County complaint, JUMC alleged that as early as 5 December 2000, more than *eight months prior* to the initiation of the Forsyth County action, it provided the architect supervising the construction project with "a copy of a preliminary independent report identifying many non-conforming workmanship issues," including "puckering shingles on many areas of the roof, concerns with the masonry and mortar joints, concerns with the location of the purlins, insulation missing in specified areas, [and] concerns with the elevations of a specified canopy." According to the same complaint, the architect "made recommendations concerning the outstanding punch-list and workmanship items" on or about 9 April 2001, *four months prior* to Batten's filing of its Forsyth County complaint. In addition, the Chair of JUMC's Board of Trustees stated in an affidavit that "JUMC and Batten began to discuss and negotiate disputes as to payment, additional items of work to be performed under the contract, warranty work, and punch lists in July 2001," one month before initiation of the Forsyth County action. Thus, according to its own

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

factual allegations in both the Forsyth County and Lee County actions and the sworn statement of the Chair of its Board of Trustees, JUMC had actual knowledge of the factual basis for its claims against Batten well before it filed its answer during the Forsyth County litigation. Accordingly, JUMC's claims against Batten were mature at the time JUMC filed that answer, and those claims are potentially subject to the compulsory counterclaim bar.

We next turn to the question of whether JUMC's claims against Batten in the Lee County litigation "arise[] out of the transaction or occurrence that is the subject matter of" Batten's claims against JUMC in the Forsyth County litigation. There is no simple test to determine when a claim "arise[s] out of the transaction or occurrence that is the subject matter of the opposing party's claim" for purposes of Rule 13(a). 1 G. Gray Wilson, *North Carolina Civil Procedure* § 13-3, at 259 (2d ed. 1995). As the United States Supreme Court stated in interpreting a predecessor to the modern federal compulsory counterclaim rule, " '[t]*ransaction*' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610, 70 L. Ed. 750, 757 (1926) (emphases added). North Carolina courts have followed a similar approach in applying Rule 13(a), consistently inquiring whether there is a "logical relationship" between the factual backgrounds and legal natures of the claims under consideration. *See, e.g., Kemp*, 166 N.C. App. at 458, 602 S.E.2d at 688; *Winston-Salem Joint Venture*, 72 N.C. App. at 675, 325 S.E.2d at 287; *Twin City Apartments, Inc.*, 45 N.C. App. at 494, 263 S.E.2d at 325.

North Carolina's compulsory counterclaim rule is identical to its federal counterpart. *Compare* Fed. R. Civ. P. 13(a) (2005) *with* N.C. R. Civ. P. 13(a). Not surprisingly, therefore, our Court of Appeals has looked to the federal courts for guidance in applying Rule 13(a). In *Curlings v. Macemore*, the Court of Appeals adopted the three-pronged analytical framework employed by the United States Court of Appeals for the Fourth Circuit and other federal courts. 57 N.C. App. 200, 202, 290 S.E.2d 725, 726 (1982); *see also* 6 Charles A. Wright et. al., *Federal Practice and Procedure* § 1410, at 52-58 (2d ed. 1990). Under this analysis, courts examine the following three factors in determining whether two or more claims arose out of the same transaction or occurrence for purposes of the compulsory counterclaim rule: " '[(1)] whether the issues of fact and law raised by the claim and counterclaim are largely the same[; (2)] whether substantially the

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

same evidence bears on both claims[;] and [(3)] whether any logical relationship exists between the two claims.' " *Curlings*, 57 N.C. App. at 202, 290 S.E.2d at 726 (quoting *Whigham v. Beneficial Fin. Co.*, 599 F.2d 1322, 1323 (4th Cir. 1979)) (alterations in original); *see also Kemp*, 166 N.C. App. at 458, 602 S.E.2d at 688; *Cloer v. Smith*, 132 N.C. App. 569, 574, 512 S.E.2d 779, 782 (1999); *Brooks v. Rogers*, 82 N.C. App. 502, 507-08, 346 S.E.2d 677, 681 (1986). Although application of Rule 13(a) is not reducible to any simple formula, we agree that courts should inquire, at a minimum, into these three factors when deciding if a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." N.C. R. Civ. P. 13(a). Accordingly, we hereby formally adopt the *Curlings* factors as a part of our compulsory counterclaim jurisprudence.

In the instant case, all three of the *Curlings* factors suggest that JUMC's claims against Batten in the Lee County litigation should have been raised as compulsory counterclaims in the Forsyth County litigation. In its Forsyth County complaint, Batten (1) sought enforcement of the settlement agreement, which resolved "disputes . . . between Batten and JUMC regarding Batten's and JUMC's performance of the [construction] [c]ontract," and (2) moved for a declaratory judgment as to the parties' "relative rights and obligations pursuant to the [construction] [c]ontract." JUMC's complaint in the Lee County litigation, by comparison, asserted claims against Batten based on alleged construction defects and premised on legal theories of (1) breach of contract, (2) breach of warranties, and (3) "Negligence/Malpractice."

Applying the *Curlings* factors, Batten's claims in the Forsyth County litigation and JUMC's claims in the Lee County litigation all raised legal issues arising out of the common factual background of the construction contract and the construction project. Moreover, both sets of claims depended in large part on evidence of the parties' respective conduct throughout the construction relationship. Finally, the claims are "logically related" in that they all concern the parties' respective performances under the construction contract and their corresponding liabilities under the construction and settlement contracts.

JUMC argues, however, that its claims against Batten cannot be compulsory counterclaims with respect to either of the claims asserted in Batten's Forsyth County complaint. First, JUMC contends that Batten's claim seeking enforcement of the settlement agreement

JONESBORO UNITED METHODIST CHURCH v. MULLINS-SHERMAN ARCHITECTS, L.L.P.

[359 N.C. 593 (2005)]

and JUMC's claims for damages based on breach of the construction contract, breach of warranties, and negligent construction "involve consideration of different facts and different legal principles." While there is some truth to this contention, Rule 13(a) "does not require that the legal claims be identical. It is sufficient that the nature of the actions and the remedies sought are logically related in fact and law." *Brooks*, 82 N.C. App. at 509, 346 S.E.2d at 682. Given that the settlement agreement purports to "satisfy the construction relationship" between JUMC and Batten and that Batten's alleged failure to perform under the construction contract was the basis of at least three of JUMC's affirmative defenses in the Forsyth County litigation, it is clear that any claims arising out of the construction contract are "logically related" to claims seeking to enforce the settlement agreement. Indeed, in JUMC's Motion to Stay Pending Arbitration, filed in conjunction with its answer in the Forsyth County litigation, JUMC itself describes the dispute over the settlement agreement as a "conflict[] arising out of or relating to the [construction] contract." We therefore reject JUMC's argument that its claims against Batten are not "logically related" to JUMC's claim seeking enforcement of the settlement agreement.

Second, JUMC argues that its claims against Batten cannot be compulsory counterclaims with respect to Batten's declaratory judgment action because the trial court never reached final judgment on the latter claim. To be sure, a claim cannot be barred by *res judicata* or collateral estoppel unless it was litigated to final judgment in a prior action. *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986). But as the United States Court of Appeals for the First Circuit explained in *Dindo v. Whitney*, "the fact that there was no final judgment on the merits should be immaterial" for purposes of the compulsory counterclaim bar. 451 F.2d 1, 3 (1st Cir. 1971). Like the First Circuit Court of Appeals, "[w]e are not persuaded that a final judgment is a sine qua non to invocation of the [compulsory counterclaim] bar" because "there is nothing in the rule limning the term 'judgment.' " *Id.* Accordingly, we reject JUMC's contention that its claims arising out of the construction relationship cannot be compulsory counterclaims in Batten's declaratory judgment action.

In conclusion, the construction contract and the parties' performance under that contract constitute a single "transaction or occurrence" that formed the factual basis for the parties' respective claims for relief in both the Forsyth County and Lee County actions.

Although Batten's claims in the Forsyth County litigation and JUMC's claims in the Lee County litigation are not identical, "[t]he issues of law and fact are . . . largely the same in both actions, . . . require substantially the same evidence for their determination, and . . . are logically related." *Cloer*, 132 N.C. App. at 574, 512 S.E.2d at 782. Accordingly, JUMC's claims against Batten were compulsory counterclaims in the Forsyth County action, and JUMC's failure to assert those claims during that action bars their subsequent assertion in any later litigation. Moreover, given that JUMC's claims against Batten could and should have been asserted as counterclaims in the Forsyth County litigation, it is not inequitable to bar JUMC from asserting those claims in a subsequent action. Indeed, to permit JUMC to bring forth its claims in such a manner would subject Batten and our courts to " 'the unnecessary delay and expense of repeated fragmentary' " litigation, *Hicks v. Koutro*, 249 N.C. 61, 64, 105 S.E.2d 196, 200 (1958) (quoting *City of Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951)), and undermine the salutary principle of judicial economy upon which Rule 13(a) is premised.

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further remand to the Lee County Superior Court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.