Julian v. Wells Fargo Bank, N.A., 2012 NCBC 30.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| MECKLENBURG COUNTY | SUPERIOR COURT DIVISION |
|  | 11 CVS 11299 |

| | | |
|---|---|---|
| WILLIAM L. JULIAN and DENISE G. JULIAN, | | |
| Plaintiffs, | | |
| v. | | **ORDER & OPINION** |
| WELLS FARGO BANK, N.A., a successor by merger to WACHOVIA BANK, N.A.; and SOUTHEASTERN WATERFRONT MARKETING, INC., | | |
| Defendants. | | |

*John F. Hanzel, P.A. by John F. Hanzel for Plaintiffs.*

*Yates, McLamb & Weyher, LLP by Dan J. McLamb, Samuel G. Thompson, Jr., and Andrew C. Buckner for Defendant Southeastern Waterfront Marketing, Inc.*

*Womble Carlyle Sandridge & Rice, LLP by W. Clark Goodman and Amanda W. Anders for Defendant Wells Fargo Bank, N.A., as successor to Wachovia Bank, N.A.*

Murphy, Judge.

**THIS MATTER** is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo," as successor to Wachovia Bank, N.A., "Wachovia") Motion to Dismiss Plaintiffs' Complaint and Defendant Southeastern Waterfront Marketing, Inc.'s ("Southeastern") Motion to Dismiss, both pursuant to Rule 9(b) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

Having considered Plaintiffs' Complaint and the parties' briefs, the Court **GRANTS** Wells Fargo's Motion to Dismiss and **GRANTS** Southeastern's Motion to Dismiss.

# I.

## PROCEDURAL HISTORY

{1}     On June 10, 2011, Plaintiffs William L. and Denise G. Julian filed their Complaint in this matter alleging claims of fraud, fraud in inducement, negligent misrepresentation, unfair and deceptive trade practices, civil conspiracy, and punitive damages against Defendants Wells Fargo, Southeastern, and Maryville Partners, Inc. ("Maryville").[1]

{2}     The case was designated as a mandatory complex business case on July 13, 2011, and assigned to this Court on July 15, 2011.  On August 12, 2011, Wells Fargo and Southeastern filed their respective Motions to Dismiss with supporting memoranda.  Plaintiffs filed their opposition briefs on September 6, 2011, with Wells Fargo filing a reply memorandum on September 19, 2011.

{3}     On December 9, 2011, Wells Fargo submitted its Suggestion of Subsequently Decided Authority citing a recent opinion of the North Carolina Court of Appeals: *In re Fifth Third Bank, Nat'l Ass'n – Village of Penland Litig.*, 719 S.E.2d 171 (N.C. Ct. App. 2011).

# II.

## FACTUAL BACKGROUND

{4}     While ordinarily the Court does not make findings of fact in connection with motions to dismiss, as such motions do "not present the merits, but only [determine] whether the merits may be reached," *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986) (citation omitted), for purposes of this Order and Opinion, the Court recites those facts from Plaintiffs' Complaint that are relevant to the Court's legal determinations.

{5}     This matter arises from a plan by Defendant Maryville to develop a 75-acre tract of waterfront property in Georgetown County, South Carolina into a subdivision known as Cravens Grant.  Maryville acquired title to the property in April 2006.  (Compl. ¶¶ 13–15.)

---

[1] Plaintiffs filed a voluntary dismissal with prejudice of all claims against Maryville on August 12, 2011.

{6}     The gravamen of Plaintiff's complaint is that Maryville and its agent, Southeastern Waterfront Marketing, Inc. (Southeastern), developed and implemented a plan to "rapidly and artificially inflate the price of real estate [in the subdivision] and sell it to unsuspecting consumers," (Compl. ¶ 10) and that Wachovia Bank, Defendant Wells Fargo's predecessor, "knowingly and willfully ignored" the "considerably and artificially inflated" appraisal of Plaintiff's lot that the bank ordered. (Compl. ¶¶ 27–28).

{7}     Maryville retained Southeastern as a sales agent.  Plaintiffs allege that Southeastern "aggressively marketed" Cravens Grant property to Plaintiff William Julian, "touting the near certainty of the property going up in value and being a sound investment." (Compl. ¶ 22.)  Plaintiffs describe Southeastern's sales pitch as "compelling," noting that "properties in Cravens Grant had already begun to sell at artificially inflated values." (Compl. ¶ 23.)  Plaintiffs allege that they decided to purchase property in Cravens Grant "as an investment" in reliance on Southeastern's representations. (Compl. ¶ 24.)  Plaintiffs agreed to purchase Cravens Grant Lot 151 for $279,880. (Compl. ¶ 25.)

{8}     Plaintiffs paid a $60,000 deposit for Lot 151 and approached a banker at Wachovia for financing. (Compl. ¶ 26.)  Wachovia ordered an appraisal of Lot 151 that Plaintiffs assert was "considerably and artificially inflated,"[2] a fact Plaintiffs allege Wachovia "knowingly and willfully ignored, to the detriment of Plaintiffs." (Compl. ¶ 28.)  Although the "appraisal did not fit within Wachovia's acceptable underwriting guidelines, . . . Wachovia went . . . ahead with the loan for the sole purpose of charging interest and fees without regard for whether the collateral was sufficient to secure the loan." (Compl. ¶ 38.)  Plaintiffs further allege that Wachovia "knew or should have known that Lot 151 was grossly overvalued

---

[2] Plaintiffs' Complaint sets forth allegations regarding comparable properties ("comps") used by Wachovia's appraiser (now deceased, and not a party to this litigation) which, taken as true, suggest that Lot 151 was appraised according to incorrect comps; adjusted upward in price because of the "inferior view" of similar-sized comps within Cravens Grant; and priced similarly to a comp with a "similar view" that was forty-two percent larger than Lot 151. (Compl. ¶¶ 31–36.)

given the transaction history of the area and the number of loans it provided in the area." (Compl. ¶ 39.)

{9} Plaintiffs allege that "[a]lmost immediately" after closing[3] Mr. Julian sought, without success, to sell Lot 151 "hoping to capitalize on the returns promised by Maryville through its agent [Southeastern]." (Compl. ¶ 41.) It was not until "late Summer 2008" that Plaintiffs learned of problems with similar properties marketed by Southeastern in North Carolina, and that "[i]t slowly became clear that the[se] problems . . . were present in Cravens Grant." (Compl. ¶¶ 43–44.) Plaintiffs allege that only then (i.e., in the second half of 2008) did they discover that the value of Lot 151 was "grossly overinflated." (Compl. ¶ 45.)

{10} A substantial number of foreclosures in Cravens Grant followed in 2009 and 2010, "further depressing property values and stigmatizing the development." (Compl. ¶ 46.) Unable to sell Lot 151, Plaintiffs defaulted on their Wachovia loan. (Compl. ¶ 48.)

{11} In support of its Motion to Dismiss, Wells Fargo submits evidence that it obtained a judgment against Plaintiffs in Mecklenburg County Superior Court for the outstanding value of the Wachovia loan, along with attorney fees and post-judgment interest, on June 20, 2011. (Wells Fargo's Br. Supp. Mot. Dismiss Ex. 2.)[4]

III.

LEGAL STANDARD

{12} The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.'" *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).

---

[3] Plaintiffs do not allege a closing date or date when they first attempted to sell Lot 151.
[4] *See Wells Fargo Bank, N.A. v. Julian*, No. 10 CVS 7326 (N.C. Super. Ct. June 20, 2011) (Williamson, J.) (order entering judgment in favor of Wells Fargo, as successor to Wachovia, on defendants' loan indebtedness). As discussed *infra*, the Court has not considered evidence of this prior lawsuit in deciding Wells Fargo's Motion to Dismiss.

{13}    While adjudication of a motion to dismiss requires that "the complaint must be liberally construed," *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (citation omitted), the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008) (quotation and citations omitted).

{14}    Furthermore, "where the complaint alleges facts that defeat the claim, the claim should be dismissed." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 312 (1999) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)).

IV.

WELLS FARGO'S MOTION

A.

SUMMARY OF ARGUMENTS

{15}    Wells Fargo first argues in its brief that Plaintiffs' claims must be dismissed as compulsory counterclaims to Wells Fargo's prior successful suit on Plaintiffs' loan indebtedness (hereinafter, the "Prior Action"), under Rule 13(a) of the North Carolina Rules of Civil Procedure, because Plaintiffs' claims inherently challenge the validity of the contract on which the Prior Action awarded judgment to Wells Fargo. Wells Fargo next advances the doctrine of collateral estoppel as barring the present suit, also based on the adjudication of the loan indebtedness in the Prior Action. Lastly, Wells Fargo attacks the Complaint as facially inadequate to call forth a remedy at law against Wells Fargo pursuant to the pleading standards of Rules 12(b)(6) and 9(b).

{16}    Plaintiffs respond that their claims against Wells Fargo were not compulsory counterclaims in the Prior Action because the appraiser of Lot 151, now deceased, would have been a necessary party to such claims "whose presence is excused by his . . . death in September 2010," and over whom North Carolina did not have personal jurisdiction. (Pls.' Br. Opp. Wells Fargo's Mot. Dismiss 5.)

Plaintiffs next argue that collateral estoppel does not bar the present suit because the Prior Action "only addressed whether Wachovia lent money to Plaintiffs . . . and whether Plaintiffs repaid that money as agreed," but "did not . . . address the validity of the underlying transaction." (Pls.' Br. Opp. Wells Fargo's Mot. Dismiss 5.) Plaintiffs continue by defending the sufficiency of each of the individual claims as pled in the Complaint.

B.

ANALYSIS

1.

PLAINTIFFS' CLAIMS AS COMPULSORY COUNTERCLAIMS UNDER RULE 13(a)

{17}    Rule 13(a) provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," so long as the claim "does not require for its adjudication the presence of third parties [over] whom the court cannot acquire jurisdiction." N.C. R. Civ. P. 13(a). A claim is not compulsory if "[a]t the time the action was commenced the claim was the subject of another pending action," or if "[t]he opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim . . . ." N.C. R. Civ. P. 13(a)(1)–(2).

{18}    "The purpose of Rule 13(a) . . . is to enable one court to resolve all related claims in one action, thereby avoiding a wasteful multiplicity of litigation." *Gardner v. Gardner*, 294 N.C. 172, 176–77, 240 S.E.2d 399, 403 (1978) (quotation and citation omitted). While the effect of failing to assert a compulsory counterclaim is not dictated by Rule 13(a), *see Jonesboro United Methodist Church v. Mullins-Sherman Architects, LLP*, 359 N.C. 593, 596, 614 S.E.2d 268, 270 (2005) (citing *Gardner*, 294 N.C. at 176, 240 S.E.2d at 403), our courts have "'consistently held that a party who does not plead a compulsory counterclaim is, after determination of the action in which it should have been pleaded, forever barred

from bringing a later independent action on that claim.'" *Id.* (quoting *Gardner*, 294 N.C. at 179, 240 S.E.2d at 404).

{19}    Despite the potential merits of Wells Fargo's arguments for dismissal under Rule 13(a), it would be improper for the court to engage in a Rule 13(a) analysis applying a Rule 12(b)(6) standard.

{20}    In deciding a motion to dismiss under Rule 12(b)(6), the court's inquiry is limited to evaluating the sufficiency of the complaint. *Kemp v. Spivey*, 166 N.C. App. 456, 462, 602 S.E.2d 686, 690 (2004) ("The trial court's consideration of evidence other than the pleading is contrary to the purpose of Rule 12(b)(6)." (citing *Eastway Wrecker Service v. City of Charlotte*, 165 N.C. App. 639, 599 S.E.2d 410, (2004) (McGee, J. dissenting))).  A motion to dismiss is converted to one for summary judgment pursuant to Rule 56 "when matters outside the pleadings are presented to and not excluded by the court." *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979) (citing *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971)).  Conversion of the Rule 12(b) motion, in turn, requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." N.C. R. Civ. P. 12(b); *see also Kemp*, 166 N.C. App. at 462, 602 S.E.2d at 690 (reversing and remanding order dismissing claims under Rule 12(b)(6) where the trial court considered other evidence and "the parties were not afforded a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" (quoting N.C. R. Civ. P. 12(b)).

{21}    The court may, in some instances, consider documents incorporated into the *complaint* in deciding a Rule 12(b)(6) motion without converting the motion to one for summary judgment. *See Brooks Distrib. Co. v. Pugh*, 91 N.C. App. 715, 718, 373 S.E.2d 300, 302, *rev'd on other grounds*, 324 N.C. 326, 378 S.E.2d 31 (1989) (finding no error where the trial court considered a contract, attached to the complaint, that formed the subject matter of the litigation).  To properly consider Wells Fargo's contention that Rule 13(a) requires dismissal of Plaintiffs' claims against it, however, the Court would have to consider matters outside of (i.e., not attached to or referenced in) the Complaint, including Judge Williamson's Order

and Judgment in the Prior Action,[5] which would in turn require the Court to permit the parties to present any other evidence material to a summary judgment determination pursuant to Rule 56.

{22}     The Court, therefore, declines to consider Wells Fargo's Rule 13(a) arguments or evidence in deciding Wells Fargo's Motion to Dismiss.

2.

COLLATERAL ESTOPPEL

{23}     "Under collateral estoppel as traditionally applied, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986) (citations omitted).  For collateral estoppel to defeat a plaintiff's claims:

> (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973) (citations omitted).

{24}     It stands to reason that summary judgment against Plaintiffs in the Prior Action would have required determination by the court that a valid loan contract existed between the parties, *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)), and that any contest to a contract's validity, such as that posed by Plaintiffs' present claims of fraud and

---

[5] Although the Complaint admits that "Plaintiffs' loan with Wachovia ultimately went into default, exposing them to substantial liability," (Compl. ¶ 48), Plaintiffs do not attach or incorporate by reference the court's order in the Prior Action.  Had Plaintiffs so much as referenced the Prior Action in the Complaint, this Court's Rule 13(a) analysis might take on different dimensions.

misrepresentation, would invariably challenge Wells Fargo's contractual rights under the Wachovia loan.[6]

{25} The Court, however, declines to conduct a collateral estoppel analysis, as such would conflict with the limited purpose and scope of Rule 12(b)(6).

{26} It is clear that, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may consider (1) documents "attached to and incorporated within a complaint," and (2) "documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). Yet, as the *Weaver* court notes, "[t]he mandatory language of these Rules is unambiguous and leaves no room for variance in practice." *Id.*

---

[6] There is ample precedent in our case law to suggest that an allegation of fraud or misrepresentation surrounding contract formation necessarily challenges the validity of the underlying contract, *see Byham v. Nat'l Cibo House Corp.*, 265 N.C. 50, 60, 143 S.E.2d 225, 234 (1965) (holding, where plaintiff asserted a fraud claim with respect to an underlying contract, that "[t]he validity of the contract is the matter which the complaint seeks to put at issue"), and will, if proven, render the contract voidable at the election of the non-culpable party or, alternatively, will allow the plaintiff equitable relief. *See Furst & Thomas v. Merritt*, 190 N.C. 397, 403, 130 S.E. 40, 44 (1925) (stating that where one party's representation induces the other to contract, and "the representation turns out to be untrue and fraudulently made, the party who relied upon it, to his injury, if he acted with reasonable prudence in the matter, is not bound to him who deceived him into executing the paper"); *Kindred of North Carolina, Inc. v. Bond*, 160 N.C. App. 90, 100, 584 S.E.2d 846, 853 (2003) (stating that a party which "supplies false information for the guidance of others in *their business transactions* . . . is subject to [negligence] liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information" (quoting *Jordan v. Earthgrains Cos., Inc.* 155 N.C. App. 762, 767, 576 S.E.2d 336, 340 (2003)); *see also Freeman v. Rothrock*, 189 N.C. App. 31, 39, 657 S.E.2d 389, 394 (2008) ("[I]t has long been a part of the common law that fraud in the inducement is a good defense to an action on a contract by one of the contracting parties." (quoting *Ex parte S. Energy Homes, Inc.*, 603 So.2d 1036, 1039 (Ala. 1992) (alteration original))); *and* RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). That a party's claims of fraud or misrepresentation inducing that party to contract are inherently entwined with an opponent's claims for breach of the same agreement is also borne out by the requirement of Rule 8(c) of the North Carolina Rule of Civil Procedure that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . failure of consideration, fraud, illegality, . . . and any other matter constituting an avoidance or affirmative defense." N.C. R. Civ. P. 8(c).

(citation omitted); *see also Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 558 (1984) (citations omitted) (holding, with respect to Rule 12(c) motions, that "[n]o evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties or the testimony of allegations by the parties in different proceedings").

{27} To apply the doctrine of collateral estoppel to Plaintiffs' claims would require the Court to determine, as an evidentiary matter not supported by the Complaint, that the Prior Action decided the precise issues now raised by Plaintiffs. Although the Court finds instances where our appellate courts have considered evidence outside the complaint in reviewing Rule 12(b)(6) motions, *see, e.g., Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 559–62, 681 S.E.2d 770, 774–75 (2009) (considering, in the light most favorable to plaintiff, the terms of a consent order from a prior action in reviewing the trial court's denial of defendant's 12(b)(6) motion to dismiss), these cases do not enlighten the Court as to how admission of such evidence conforms to the "unambiguous" and "mandatory language" of Rule 12. *See Weaver*, 187 N.C. App. at 204, 652 S.E.2d at 707. In *Turner*, the North Carolina Supreme Court reviewed the trial court's denial of defendant's Rule 12(b)(6) motion—which advanced the defense of collateral estoppel—despite the interlocutory nature of defendant's appeal, holding that "denial of a motion to dismiss a claim for relief affects a substantial right when the motion to dismiss makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel." *Turner*, 363 N.C. at 558, 681 S.E.2d at 773. In revisiting defendant's motion, the Supreme Court considered the details of the consent order from the prior proceeding, but without clearly articulating the terms on which such evidence was properly before the trial court. *Id.* at 559–62, 681 S.E.2d at 774–75.

{28} This Court finds no incorporating reference in Plaintiffs' Complaint that would clearly invite consideration of Judge Williamson's Order and Judgment

in the Prior Action[7] under a Rule 12(b)(6) standard, *see Weaver*, 187 N.C. App. at 204, 652 S.E.2d at 707, and, therefore, declines to do so in the absence of clear authority to support the use of such evidence where Rule 12(b)(6) otherwise "leaves no room for variance in practice." *Id.*

3.

## RULE 12(b)(6) ANALYSIS

{29} For the reasons set forth below, the Court determines that the facts pled in the Complaint are nevertheless insufficient to support Plaintiffs' claims of fraud, fraud in inducement, negligent misrepresentation, unfair and deceptive trade practices, civil conspiracy, and punitive damages against Defendant Wells Fargo.

a.

## FRAUD AND NEGLIGENT MISREPRESENTATION

{30} To state a claim for fraud, a plaintiff must allege a "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive[,] . . . (5) resulting in damage to the injured party." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

{31} Claims of fraud are held to a heightened pleading standard pursuant to Rule 9(b) of the North Carolina Rules of Civil Procedure. Specifically, the complaint must allege with particularity the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." *Harrold*, 149 N.C. App. at 782, 561 S.E.2d at 918 (quoting *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)). In stating a fraud claim, however, "[m]alice, intent, knowledge, and other condition of mind . . . may be averred generally." N.C. R. Civ. P. 9(b).

---

[7] The Court refers here to the fact that although Plaintiffs' Complaint admits to Plaintiffs' default on the Wachovia note, no allegation in the Complaint contains any reference to the Prior Action or any resulting judgment. (*see* Compl. ¶ 48.)

{32}   A viable claim for negligent misrepresentation requires allegations that a plaintiff justifiably relied to his detriment "on information prepared without reasonable care . . . by one who owed the relying party a duty of care." *Hospira Inc. v. Alphagary Corp.*, 194 N.C. App. 695, 700, 671 S.E.2d 7, 12 (2009) (quoting *Raritan River Steel Co.*, 322 N.C. at 206, 367 S.E.2d at 612).

{33}   Furthermore, "'when the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.'" *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846–47 (2001) (quoting *Hudson-Cole*, 132 N.C. App. at 346, 511 S.E.2d at 313).

{34}   In their brief, Plaintiffs describe the sale of Cravens Grant properties as a collaborative "pump and dump" scheme by Defendants to inflate property values, then dump the property upon unsuspecting buyers. Plaintiffs' Complaint, however, does not allege that Wells Fargo predecessor Wachovia had any dealings with Plaintiffs, or the other Defendants, prior to Plaintiffs' decision to purchase Lot 151. For this reason, the Court's reading of Plaintiffs' claims of fraud or negligence against Wells Fargo are necessarily confined to Wachovia's conduct toward Plaintiffs after Plaintiffs first contacted Wachovia regarding a loan, i.e., after Plaintiffs had already agreed to the terms of sale for Lot 151, including the price.

{35}   Plaintiffs' allegations do not support claims of fraud or fraudulent inducement against Wells Fargo for several reasons. First, Plaintiffs' pleading of these claims does not conform to the specificity requirements of Rule 9(b). The Complaint does not allege the identity of an individual officer, employee, or agent of the bank who made any deceptive or misleading representation to Plaintiffs. In fact, Plaintiffs' allegations of fraud and fraud in inducement fail to specifically name Wachovia. Rather, Plaintiffs seek to incorporate Wells Fargo as a defendant in these claims through vague, general references to "Defendants' [collective] fraudulent misrepresentations . . . [and] inducements." (Compl. ¶¶ 55, 62.) These conclusory allegations do not meet the particularity requirements of Rule 9(b).

{36}     Second, Plaintiffs allege that the appraisal of Lot 151 ordered by Wachovia was "considerably and artificially inflated," and that Wachovia "knowingly and willfully ignored" this fact.  (Compl. ¶ 28.)  The Complaint does not allege, however, that Wachovia performed the appraisal for Plaintiffs' benefit, or that Wachovia was somehow obligated to Plaintiffs regarding the accuracy of the appraisal.  In the absence of such allegations, it is reasonable for the court to conclude that Wachovia's appraisal of Lot 151 was conducted for the benefit of the bank, not Plaintiffs.  *See Allran v. Branch Banking & Trust Co.*, 2011 NCBC 21 ¶ 42 (N.C. Super. Ct. July 6, 2011), http://www.ncbusinesscourt.net/opinions/2011_NCBC_21.pdf ("Appraisals are not conducted for the benefit of borrowers, but instead to protect banks from making under-secured loans." (citing 12 C.F.R. § 353.5 (2011))).

{37}     Third, the Complaint does not allege that Plaintiffs actually or justifiably relied on representations made by Wachovia.  Plaintiffs contracted to purchase Lot 151 at an allegedly inflated price before contacting Wachovia for a loan.  Absent an allegation of actual reliance, Plaintiffs have failed to properly allege a claim of fraud against Wells Fargo.  *See Walker v. Town of Stoneville*, 712 S.E.2d 239, 244 (N.C. Ct. App. 2011) (holding that "[j]ustifiable reliance requires actual reliance," which the court in turn defines as "direct reliance on false information" (citations and quotation omitted)).  Even assuming, *arguendo*, that Plaintiffs did in fact rely on Wachovia's appraisal, they do not plead any circumstances that would permit the Court to infer that such reliance was reasonable.  *See Cobb v. Pennsylvania Life Ins. Co.*, 715 S.E.2d 541, 549 (N.C. Ct. App. 2011) ("Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." (citing *State Props., LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002)); *see also Allran*, 2011 NCBC 21 ¶ 42.

{38}     The absence of allegations of actual and justifiable reliance also defeats Plaintiffs' claim against Wells Fargo for negligent misrepresentation.  *See Cobb*, 715 S.E.2d at 549–50 ("'Justifiable reliance is an essential element of both

fraud and negligent misrepresentation.'" (quoting *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996)).

{39}    For these reasons, Plaintiffs' allegations against Wells Fargo for fraud, fraud in inducement, and negligent misrepresentation are insufficient to satisfy the liberal pleading standard applicable to 12(b)(6) motions.  Plaintiffs' pleading of the fraud claims, furthermore, lack the specificity required by Rule 9(b).  Wells Fargo's Motion to Dismiss these claims is, therefore, **GRANTED**.

b.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{40}    Pursuant to N.C. Gen. Stat. § 75–1.1 (hereinafter "UDTPA"), "[a] claim for unfair and deceptive trade practices . . . must allege that: '(1) the [defendant] committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the [plaintiff] or to the [plaintiff's] business.'" *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009) (quoting *Walker v. Sloan*, 137 N.C. App. 387, 395, 529 S.E.2d 236, 243 (2000)) (alteration original). "Whether a particular practice violates the UDTPA is typically a question of law for the court." *McDonald's Corp. v. Five Stars, Inc.*, 2010 N.C. App. LEXIS 2097, at *8 (N.C. Ct. App. Nov. 16, 2010) (unpublished opinion) (citing *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).

{41}    "'Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show "actual reliance" on the alleged misrepresentation in order to establish that the alleged misrepresentation "proximately caused" the injury of which plaintiff complains.'" *Sunset Beach Dev., LLC*, 196 N.C. App. at 211, 675 S.E.2d at 53 (quoting *Tucker v. Blvd. at Piper Glen LLC*, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002)).

{42}    Plaintiffs' UDTPA claim against Wells Fargo fails because, as previously noted, Plaintiffs do not allege actual reliance on any representations by

Wachovia in deciding to purchase Lot 151.  Plaintiffs, therefore, cannot demonstrate that Wells Fargo's conduct proximately caused Plaintiffs' injury.  *See id.*

{43}    Although Plaintiffs argue "Defendants' unfair and deceptive trade practices . . . go beyond mere fraud," this assertion is supported only by Plaintiffs' counsel's explanation that "[n]ot only did Defendants conceal the true value of the property, they purposely made it appear more valuable by inflating the price of properties around it to unsustainable levels." (Pls.' Br. Opp. Wells Fargo's Mot. Dismiss 8.)  Other than the conduct Plaintiffs allege as the basis for their claims of fraud and negligence, they make no additional allegations of unfair or deceptive acts in support of their UDTPA claim.  *See Strickland v. Hedrick*, 194 N.C. App. at 20, 669 S.E.2d at 73 (holding that the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  Plaintiffs, therefore, have not alleged any misconduct, misstatement or misrepresentation by Wells Fargo upon which Plaintiffs justifiably relied.  *See Cobb*, 715 S.E.2d at 549–50.

{44}    Plaintiffs' allegations are, therefore, insufficient to state a claim for unfair and deceptive trade practices against Wells Fargo. Accordingly, Well Fargo's motion to dismiss this claim is **GRANTED**.

c.

CIVIL CONSPIRACY AND PUNITIVE DAMAGES

{45}    Upon the facts as pled, the insufficiency of Plaintiffs' substantive claims for fraud, negligence, and unfair and deceptive trade practices against Wells Fargo dictates that Plaintiffs' remaining claims for civil conspiracy and punitive damages must also fail.

{46}    A claim for civil conspiracy requires "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 712 S.E.2d 328, 333 (N.C. Ct. App. 2011) (quoting *Privette v. Univ. of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)).

{47}   "It is well established that 'there is not a separate civil action for civil conspiracy in North Carolina.'" *Id.* (quoting *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)). "Instead, 'civil conspiracy is premised on the underlying act.'" *Id.* (quoting *Harris v. Matthews*, 361 N.C. 265, 273 n.2, 643 S.E.2d 566, 571 n.2 (2007)). Thus, where the court finds "judgment for the defendants on the underlying tort claims to be proper, . . . a plaintiff's claim for civil conspiracy must also fail." *Id.* at 333–34 (citations omitted).

{48}   Because the Court has already rejected Plaintiffs' substantive claims against Wells Fargo, no allegations of underlying wrongful conduct by Wells Fargo remain to support a claim for a conspiracy. Similarly, because the Court by this Order and Opinion dismisses all the underlying tort claims alleged as to all remaining defendants,[8] no allegations of wrongful conduct by *any* defendant remain upon which an agreement could be based. *See State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008) ("To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984))).

{49}   Having dispatched all other claims against Wells Fargo, Plaintiffs' claim for punitive damages against this Defendant also fails for want of an independent cause of action. *Iadanza v. Harper*, 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2005) ("[P]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action[.] . . . If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." (quotation and citation omitted) (alteration original)).

{50}   For these reasons, the Court **GRANTS** Defendant Wells Fargo's Motion to Dismiss the claims for conspiracy and punitive damages.

---

[8] See section V, dismissing all claims against Southeastern.

V.

SOUTHEASTERN'S MOTION

{51}     Plaintiffs bring the same claims (fraud, fraud in inducement, negligent misrepresentation, unfair and deceptive trade practices, civil conspiracy, and punitive damages) against Defendant Southeastern that they brought against Wells Fargo.  Southeastern argues that Plaintiffs' allegations are insufficient to state any claim upon which relief can be granted pursuant to Rule 12(b)(6) and that Plaintiffs' pleading of fraud and fraud in inducement fail due to an absence of the particularity demanded by Rule 9(b).  Although Southeastern's position with respect to Plaintiffs is somewhat different than Defendant Wells Fargo's, the Court holds that Plaintiffs' claims against Southeastern fail largely for the same reasons set forth in the Court's discussion of Wells Fargo's Motion to Dismiss.

{52}     First, as was the case with the fraud allegations against Wells Fargo, Plaintiffs' Complaint fails to identify any individual employee, officer, or agent of Southeastern who made a fraudulent misrepresentation.  Thus, on its face, the Complaint does not meet the heightened pleading requirements of Rule 9(b) to support a fraud-based claim against Southeastern.  *See Harrold*, 149 N.C. App. at 782, 561 S.E.2d at 918 (holding that the complaint must allege with particularity the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations.").

{53}     Regarding Plaintiffs' negligence claim, the Court recognizes that Southeastern, unlike Wells Fargo, made direct representations to Plaintiffs that Plaintiffs allege induced them to purchase Lot 151.  The Court, however, need not address whether Southeastern violated a duty to Plaintiffs in its capacity as sales agent for Maryville, because Plaintiffs' Complaint pleads a degree and type of reliance on Southeastern's alleged representations for which there is no recognized legal or equitable remedy under North Carolina law.

{54}     In their Complaint, Plaintiffs allege that they relied solely on Southeastern's "compelling" sales pitch in deciding to purchase Cravens Grant

property "as an investment." Beyond the allegation that "properties in Cravens Grant had already begun to sell at artificially inflated values," (Compl. ¶ 23), Plaintiffs do not allege that Southeastern withheld facts critical to Plaintiffs' determination of the future value of property in Cravens Grant. *Cf. Powell v. Wold*, 88 N.C. App. 61, 68, 362 S.E.2d 796, 799 (1987) (holding sufficient to withstand a motion to dismiss plaintiffs' allegation that defendant, a real estate broker, "misrepresented, or neglected to communicate, facts critical to the future value of the property," where defendant withheld knowledge of imminent plans for road construction that would negatively affect the property's future value).

{55}    It is a long-standing principle of our common law that promises relating to the future value of property, like the representations allegedly made by Southeastern and relied on by Plaintiffs,[9] even when offered as an inducement to purchase, do not concern any *subsisting fact* that could form the basis of reasonable reliance for claims of fraudulent (or, by extension, negligent) misrepresentation. *See, e.g., Williamson v. Holt*, 147 N.C. 515, 520, 61 S.E. 384, 386 (1908) ("'[P]romissory representations,' looking to the future as to what the vendee can do with the property [and] how much he can make on it . . . are on a par with false affirmations and opinions as to the value of property, and do not generally constitute legal fraud."); *see also Cobb*, 715 S.E.2d at 549–50 (holding that justifiable reliance is an element of both fraud and negligent misrepresentation claims).

{56}    The Complaint, furthermore, does not contain allegations that Plaintiffs were denied an opportunity to investigate whether the present value of Lot 151 at the time of their purchase was less than that represented by Southeastern. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. at 59, 554 S.E.2d at 846–47; *see also Allran*, 2011 NCBC 21 ¶ 41 ("Even if the Complaint sufficiently alleged that [the bank] had a duty to disclose [appraisal] information to Plaintiff, it fails

[9] Plaintiffs concede that Plaintiffs purchased Lot 151 "as an investment," (Compl. ¶ 24), and that Mr. Julian began marketing the property for resale "[a]lmost immediately" after closing in order to "capitalize on the returns promised by Maryville through its agent [Southeastern]." (Compl. ¶ 41.)

to set forth facts explaining why Plaintiff's reliance on [the bank's] silence with respect to the loan transaction and property purchase was both reasonable and detrimental.").

{57} For these reasons, Plaintiffs' pleading of negligent misrepresentation against Southeastern is inadequate to support a claim for relief.

{58} As with Wells Fargo, Plaintiffs do not plead any additional conduct by Southeastern, beyond that purported to constitute fraud or negligence, in support of their claims for unfair and deceptive trade practices, civil conspiracy, or punitive damages. For these reasons, the Court **GRANTS** Defendant Southeastern's Motion to Dismiss these claims.

VI.

CONCLUSION

{59} For the reasons stated herein, the Court **GRANTS** Defendant Wells Fargo's Motion to Dismiss Plaintiffs' Complaint and **GRANTS** Defendant Southeastern's Motion to Dismiss. Accordingly, Plaintiffs' claims against Wells Fargo, as successor to Defendant Wachovia, and Plaintiffs' claims against Southeastern, are hereby **DISMISSED** with prejudice.

**SO ORDERED**, this the 22nd day of May, 2012.