WAUNETA HOLLOWAY v. CLAYTON HOLLOWAY

No. COA11-1135

(Filed 5 June 2012)

**1. Pretrial Proceedings—compulsory counterclaims—res judicata—claim not yet mature**

The trial court did not err by denying defendant's motion to dismiss plaintiff's complaint pursuant to Rule 13(a) of the North Carolina Rules of Civil Procedure on the grounds that plaintiff's claims were compulsory counterclaims in defendant's prior action for summary ejectment and therefore barred by *res judicata* principles. Plaintiff's claim was not yet mature at the time of defendant's prior summary ejectment proceedings.

**2. Contracts—breach of contract—sufficient allegations— motion to dismiss properly denied**

The trial court did not err in failing to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure where the allegations, when liberally construed and taken as true, were sufficient to assert a claim for which relief may be granted.

**3. Fiduciary Relationship—son-mother relationship—sufficient evidence**

The trial court did not err in finding that a fiduciary relationship existed between defendant and plaintiff based on a son-mother relationship.

Appeal by defendant from order entered 19 April 2011 by Judge Arnold O. Jones, II, in Wayne County Superior Court. Heard in the Court of Appeals 8 February 2012.

*Farris A. Duncan for plaintiff-appellee.*

*Gray, Johnson & Lawson, LLP., by Thomas H. Johnson, Jr., for defendant-appellant.*

Bryant, Judge.

Where plaintiff's claim was not mature at the time of defendant's action for summary ejectment and where the allegations in plaintiff's complaint are sufficient on their face to state a claim for which relief can be granted, the trial court did not err in denying defendant's

motions to dismiss. Where competent evidence exists to support the trial court's findings of fact, the trial court did not err in finding a fiduciary relationship between plaintiff and defendant. We affirm the trial court's order.

## Facts and Procedural History

Plaintiff Wauneta Holloway filed suit against her son, defendant Clayton Holloway, on 22 December 2009 in Wayne County Superior Court alleging breach of agreement and seeking recovery of forty-thousand dollars ($40,000.00), court costs, attorney's fees, and such other relief as the court deemed proper. Prior to the case being called for trial, defendant filed three motions. Defendant's first two motions, a motion to strike for failure to state a claim upon which relief could be granted (treated as a Rule 12(b)(6) motion by the trial court) and a motion to dismiss pursuant to Rule 13(a) and res judicata, were filed 4 January 2011. Defendant's third motion, a motion for a change of venue, was filed 15 February 2011. After hearings, the court denied all three motions. The case came on for bench trial during the 21 February 2011 session of Wayne County Superior Court, the Honorable Arnold O. Jones II, Judge Presiding.

Evidence presented at trial tended to show that prior to June 2007, plaintiff was living in California. In May 2007, as a result of plaintiff's deteriorating living conditions in California, plaintiff and defendant discussed plaintiff moving to North Carolina so that defendant could help care for plaintiff. At that time, defendant was living with his wife in Wayne County and owned a modular home in Greene County that he was renting to tenants. It was agreed that plaintiff would move back to North Carolina and move into the modular home that defendant owned and rented. In return for living in the modular home, plaintiff was to help pay the mortgage on the modular home, pay back taxes owed to Greene County, and pay rent for the land on which the modular home was situated. The agreement was never reduced to writing.

In June 2007, defendant traveled to California to help plaintiff move to North Carolina. Plaintiff and defendant made the cross-country road-trip to North Carolina together in plaintiff's van, towing behind them a trailer full of plaintiff's belongings, including four dogs and eleven cats.

Upon arriving in North Carolina, plaintiff began living in defendant's modular home. In return, plaintiff made the following payments for defendant: plaintiff paid back taxes owed to Greene County for

the years '04, '05 and '06; plaintiff paid the rent for the land on which the modular home was situated for the years '08 and '09; and plaintiff made a payment of $53,264.92 to pay off the mortgage on the modular home in full. Plaintiff testified that she and defendant agreed she would help pay off the mortgage. Defendant testified that he told plaintiff not to pay the mortgage in full but instead to make monthly payments as they came due. Despite the contradictory testimony, it is clear that plaintiff continued to live in the modular home.

Over two years later, in September 2009, defendant filed an action for summary ejectment in Greene County Small Claims Court seeking to remove plaintiff from the modular home. As a basis for his suit, defendant testified that the land owner and neighbors were complaining about the condition of the property. Defendant stated that he tried to discuss the problems with plaintiff, but plaintiff would not listen. The magistrate judge ruled in favor of plaintiff. Defendant appealed the ruling to Greene County District Court. The case was heard before a jury on 23 November 2009, the Honorable Timothy I. Finan, Judge Presiding. The jury returned a unanimous verdict in favor of plaintiff and the appropriate judgment was entered.

On 4 December 2009, plaintiff received a letter from the landlord of the property on which the modular home was situated. The letter stated that no subleasing was allowed on the property. Plaintiff testified that, at that point, she had had enough and could no longer take the harassment. Plaintiff vacated the modular home by 1 January 2010 and shortly after filed the case *sub judice*.

At the conclusion of evidence and arguments on 22 February 2011, Judge Jones took the case under advisement. On 19 April 2011, Judge Jones entered an order finding in favor of plaintiff in the amount of $29,870.58 plus court costs. Judge Jones found there to be no enforceable contract between the plaintiff and defendant but held that a fiduciary relationship existed between the parties, and that defendant was unjustly enriched when plaintiff paid off the mortgage on his modular home. Defendant appeals.

On appeal, defendant raises the following issues: whether the trial court erred (I) by denying defendant's motion to dismiss plaintiff's complaint as a compulsory counterclaim pursuant to Rule 13(a) barred by res judicata; (II) by denying defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) when there was no contract between the parties; and (III) in finding that the defendant was a fiduciary for the plaintiff.

*I*

**[1]** Defendant contends that the trial court erred in denying his motion to dismiss plaintiff's complaint pursuant to Rule 13(a) of the North Carolina Rules of Civil Procedure on the grounds that plaintiff's claims were compulsory counterclaims in defendant's prior action for summary ejectment and therefore barred by res judicata principles. We disagree.

Rule 13(a) of the North Carolina Rules of Civil Procedure provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

N.C. Gen. Stat. § 1A-1, Rule 13(a) (2011). To determine whether a claim arises out of the same transaction or occurrence as a prior claim, we must consider: " '(1) whether the issues of fact and law raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence bears on both claims; and (3) whether any logical relationship exists between the two claims.' " *Jonesboro United Methodist Church v. Mullins-Sherman Architects, L.L.P.*, 359 N.C. 593, 599-600, 614 S.E.2d 268, 272 (2005) (quoting *Curlings v. Macemore* 57 N.C. App. 200, 202, 290 S.E.2d 725, 726 (1982)) (brackets omitted). Even then, "the compulsory counterclaim rule applies only to claims that are mature at the time the responsive pleading is filed." *Id.* at 597, 614 S.E.2d at 271.

"The purpose of Rule 13(a), making certain counterclaims compulsory, is to enable one court to resolve 'all related claims in one action, thereby avoiding a wasteful multiplicity of litigation . . . .' " *Gardner v. Gardner*, 294 N.C. 172, 176-177, 240 S.E.2d 399, 403 (1978) (citations omitted). Thus, "Rule 13(a) is a tool designed to further judicial economy. The tool should not be used to combine actions that, despite their origin in a common factual background, have no logical relationship to each other." *Twin City Apartments, Inc. v. Landrum*, 45 N.C. App. 490, 494, 263 S.E.2d 323, 325 (1980).

> Under the doctrine of res judicata: "Where a second action or proceeding is between the same parties as the first action or proceeding, the judgment in the former action or proceeding is con-

clusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding."

*Fickley v. Greystone Enterprises, Inc.*, 140 N.C. App. 258, 260, 536 S.E.2d 331, 333 (2000) (quoting *Young v. Young*, 21 N.C. App. 424, 204 S.E.2d 711 (1974)).

However, despite Rule 13(a) of the North Carolina Rules of Civil Procedure, "[n]o counterclaim, cross claim or third-party claim which would make the amount in controversy exceed [five-thousand dollars ($5,000.00)] is permissible in a small claim action assigned to a magistrate." N.C. Gen. Stat. § 7A-219 (2011) (substituting the jurisdictional amount in controversy maximum established by N.C. Gen. Stat. § 7A-210 (2011)). Therefore, "[n]otwithstanding G.S. 1A-1, Rule 13, failure by a defendant to file a counterclaim in a small claims action assigned to a magistrate . . . shall not bar such claims in a separate action." *Id.* But, "[o]n appeal from the judgment of the magistrate for trial de novo before a district judge, the judge shall allow appropriate counterclaims, cross claims, third party claims, replies, and answers to cross claims, in accordance with G.S. 1A-1, et seq." N.C. Gen. Stat. § 7A-220 (2011).

Prior to the case now before us, defendant initiated two summary ejectment proceedings against plaintiff. Defendant's first complaint for summary ejectment was heard by a magistrate in Greene County Small Claims Court in September 2009. Upon a ruling in favor of plaintiff, defendant appealed the decision to Greene County District Court. The case was heard before a jury on 23 November 2009, the Honorable Timothy I. Finan, Judge Presiding. The jury returned a unanimous verdict in favor of plaintiff, finding that an agreement between the parties had been entered into concerning plaintiff living in defendant's modular home and that the agreement had not been breached. A judgment was entered accordingly on 7 December 2009.

It is clear that N.C. Gen. Stat. § 7A-219 prohibited plaintiff from filing her claim as a counterclaim in the first action for summary ejectment, as plaintiff's forty-thousand dollar ($40,000.00) claim would have far exceeded the five-thousand dollar ($5,000.00) jurisdictional limit for controversies allowed to be heard in a small claims action assigned to a magistrate. However, we must next consider whether plaintiff could have asserted her claim as a counterclaim in defendant's appeal for a trial de novo to Greene County District Court pursuant to N.C. Gen. Stat. §7A-220.

## HOLLOWAY v. HOLLOWAY

[221 N.C. App. 156 (2012)]

In order to determine if plaintiff's claim was a compulsory counterclaim under Rule 13(a), we must determine if the claims arise out of the same transaction or occurrence and whether plaintiff's claim was mature at the time plaintiff filed her responsive pleading to defendant's action for summary ejectment. *See* N.C. Gen. Stat. § 1A-1, Rule 13(a).

It is clear that plaintiff's claim arises out of the same transaction or occurrence as defendant's prior summary ejectment action. First, the issues of fact and law raised by the two claims both arise out of the purported agreement between plaintiff and defendant for plaintiff to live in defendant's modular home. Second, substantially the same evidence is necessary to prove an agreement and breach of that agreement. Third, there is a logical relationship between the two claims as both claims relate to plaintiff's residency in defendant's modular home.

Yet, as to whether plaintiff's claim was mature at the time of defendant's appeal, plaintiff contends that there are additional factors in the case *sub judice* that could not have been asserted in response to defendant's prior action for summary ejectment. We agree. Specifically, plaintiff was still living in the modular home and the landlord had not yet sent plaintiff the letter stating that subleasing of the property was not allowed. At the time defendant's action for summary ejectment was filed, subleasing the property was not an issue. Evidence presented at trial indicates that plaintiff paid rent to the landlord for two years and the landlord never mentioned that subleasing was not allowed. Furthermore, before plaintiff moved into the modular home, defendant rented the modular home to a friend of the landlord's granddaughter and the issue of subleasing was never brought up.

In the current action, plaintiff specifically claims that defendant breached their agreement "by causing the landlord to give notice of eviction from the space where the home was located so [plaintiff could] no longer occupy the home." This claim could not have been asserted as a counterclaim in defendant's prior summary ejectment action as plaintiff's assertion was premised on her receipt of the landlord's letter which did not occur until 4 December 2009, after the jury returned a unanimous verdict in favor of plaintiff in the summary ejectment action. Thus, plaintiff's claim in the present proceedings was not mature at the time of her responsive pleadings in defendant's summary ejectment action.

Given that plaintiff's claim was not yet mature at the time of defendant's prior summary ejectment proceedings, the lower court did not err in denying defendant's motion to dismiss based on Rule 13(a) of the North Carolina Rules of Civil Procedure and principles of res judicata. Defendant's argument is overruled.

*II*

**[2]** Next, defendant contends that the trial court erred in failing to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure because there was no contract between the parties on which to base a breach of contract claim. We disagree.

" 'A Rule 12(b)(6) motion tests the legal sufficiency of the pleading.' " *Carlisle v. Keith,* 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Sterner v. Penn,* 159 N.C. App. 626, 628, 583 S.E.2d 670, 672 (2003)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.,* 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam,* 357 N.C. 567, 597 S.E.2d 673 (2003).

A Rule 12(b)(6) motion is a motion to dismiss for "[f]ailure to state a claim upon which relief can be granted." N.C. Gen. Stat. § 1A-1, Rule 12. "In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback,* 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citing *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 229 S.E.2d 297 (1976)). More specifically, dismissal under Rule 12(b)(6) is proper when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford County,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.,* 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)). "The complaint should be liberally construed and the court should not dismiss the complaint unless it appears that plaintiff is not entitled to relief under any facts that could be proven." *Gregory v. City of Kings Mountain,* 117 N.C. App. 99, 102, 450 S.E.2d 349, 352 (1994) (citing *Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. 216, 367 S.E.2d 647 (1988)).

HOLLOWAY v. HOLLOWAY

[221 N.C. App. 156 (2012)]

After review of the pleadings, we cannot say that the lower court erred in denying defendant's motion to dismiss under Rule 12(b)(6). Plaintiff's complaint alleges that,

> In telephone conversations prior to June, 2007, the parties agreed that Plaintiff would sell her property in California and relocate to the manufactured home owned by Defendant . . ., that Plaintiff would pay off the mortgage on the home, pay back taxes owed Greene County, pay lot rent for the space where the home was located and would have the right to live in the home as long as she was living or otherwise wanted to live in the home.

Plaintiff further alleges that "Defendant has breached the agreement by attempting to have her evicted and by causing the landlord to give notice of eviction from the space where the home was located so she can no longer occupy the home." These allegations, when liberally construed and taken as true, are sufficient to assert a claim for which relief may be granted.

Defendant argues that the trial court erred in failing to dismiss the complaint because there was no written contract to satisfy North Carolina's Statute of Frauds. North Carolina's Statute of Frauds provides:

> All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them, . . .; and all other leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith . . . .

N.C. Gen. Stat. § 22-2 (2011); see also N.C. Gen. Stat. § 43-38 (2011) ("All leases or contracts affecting land for a period exceeding three years shall be in writing, duly proved before the clerk of the superior court, recorded in the register's office, and noted upon the registry and upon the owner's certificate."). However, as previously stated, a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is a motion on the pleadings. *Carlisle*, 169 N.C. App. at 681, 614 S.E.2d at 547. Where plaintiff sufficiently alleged an agreement and breach of that agreement, the trial court did not err in denying defendant's motion.

Furthermore, "[i]t has long been the rule in this State that the Statute of Frauds bars only enforcement of the invalid contract; it *does not bar other claims which a party might have even though*

those claims arise in connection with the voidable lease." *Kent v. Humphries*, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981) (citing *Ingram v. Corbit*, 177 N.C. 318, 99 S.E. 18 (1919)). Here, plaintiff is not seeking the enforcement of the agreement with defendant. Instead, plaintiff seeks the return of money used to pay off the mortgage on defendant's modular home.

Looking only at plaintiff's complaint, the facts alleged, when liberally construed and taken as true, are sufficient to state a claim for which relief may be granted. As a result, the trial court did not err when it denied defendant's motion to strike (treated as a Rule 12(b)(6) motion to dismiss). Defendant's argument is overruled.

### III

[3] Defendant's final contention is that the trial court erred in finding that a fiduciary relationship existed between defendant and plaintiff based on a son-mother relationship.

When we review an order from a non-jury trial, "we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.'" *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); *see also Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) ("[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary." (citations and quotations omitted)). "'Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.'" *Id.* (quoting *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (citing Humphries v. City of Jacksonville, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980))). "'Under a de novo review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Id.* at 632-33, 669 S.E.2d at 294 (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002))).

"'The courts generally have declined to define the term "fiduciary relation" and thereby exclude from this broad term any relation that may exist between two or more persons with respect to the rights of

persons or property of either.' " *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Yet, our Supreme Court has held a fiduciary relationship exists where " 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . .' " *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). "Thus, the relationship can arise in a variety of circumstances and may stem from varied and unpredictable factors." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991) (internal citation omitted). "Whether such a relationship exists is generally a question of fact . . . ." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 178, 684 S.E.2d 41, 53 (2009) (citing *Stamm v. Salomon*, 144 N.C. App. 672, 680, 551 S.E.2d 152, 158 (2001)).

On appeal, defendant contends that a familial relationship between a mother and son, in and of itself, is insufficient to support a finding of a fiduciary relationship. Defendant further argues that plaintiff placed no special confidence in defendant to support a finding of a fiduciary relationship. We agree with defendant's initial argument, as it has long been established that the finding of a familial relationship alone does not create a fiduciary relationship. *See Davis v. Davis*, 236 N.C. 208, 211, 72 S.E.2d 414, 416 (1952) ("Here, we are dealing with a parent and his son and daughter-in-law. It is a family relationship, not a fiduciary one . . . ."); *Hayes v. Cable*, 52 N.C. App. 617, 619, 279 S.E.2d 80, 81 (1981) ("The relationship of a father and son is a family relationship, not a fiduciary one."). We disagree, however, with defendant's contention that there was no competent evidence in the record to support a finding that plaintiff and defendant had a fiduciary relationship based on special confidences.

In the order entered 19 April 2011 in Wayne County Superior Court, Judge Jones found, in relevant part that in June 2007 following discussion between the parties, defendant went to California and helped plaintiff move to North Carolina into defendant's modular home; that plaintiff believed she could live in defendant's modular home for the rest of her life as long as she made payments on said home; that plaintiff paid the defendant's mortgage of $53,264.92 in full; that, although there was no contract, defendant is the son of plaintiff and did encourage, if not induce, her to move to North Carolina; and that a fiduciary relationship existed between plaintiff

and defendant. Based on the testimony at trial, these findings are supported by competent evidence.

Both plaintiff and defendant testified at trial that they discussed plaintiff moving to North Carolina. In addition, both plaintiff and defendant testified that the reason plaintiff moved to North Carolina was for plaintiff to be closer to defendant so that defendant could care for her. Defendant made his modular home available to plaintiff if she helped pay the mortgage on the modular home, paid back taxes owed to Greene County, and paid the rent for the land on which the modular home was situated. Defendant then traveled to California and helped plaintiff move to North Carolina and into the modular home. We find this evidence sufficient to support the trial court's finding that a fiduciary relationship existed. Although a son-mother relationship alone does not create a fiduciary relationship, the evidence provided at trial is more than sufficient to support a determination that plaintiff reposed a special confidence in defendant given that defendant encouraged and then helped plaintiff move to North Carolina so that he could care for her.

Therefore, where our standard of review is whether competent evidence exists to support the trial court's findings of fact and whether the findings support the trial court's conclusions, we hold that sufficient evidence exists to support the conclusion that a fiduciary relationship existed between plaintiff and defendant. Defendant's argument is overruled.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

Judges ELMORE and ERVIN concur.