NO. COA13-1450

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

4U HOMES & SALES, INC.,
    Plaintiff

v.                                      Mecklenburg County
                                        No. 13 CVD 8008

HELEN EVETTE MCCOY,
    Defendant


Appeal by plaintiff and defendant from order entered 13 August 2013 by Judge Ty Hands in Mecklenburg County District Court.  Heard in the Court of Appeals 23 April 2014.

*Leslie C. Rawls for Plaintiff.*

*Legal Aid of North Carolina, Inc., by Chadwick H. Crockford & Isaac W. Sturgill, and Legal Services of Southern Piedmont, by Edward P. Byron, for Defendant.*

ERVIN, Judge.

Plaintiff 4U Homes & Sales, Inc., and Defendant Helen Evette McCoy appeal from a judgment entered by the trial court rejecting Plaintiff's request that Defendant be summarily ejected from a rental house owned by Plaintiff, awarding Defendant $3,705.00 in compensatory damages for breach of the implied warranty of habitability, and finding in Plaintiff's favor with respect to the unfair and deceptive trade practice and unfair debt collection practice claims that Defendant had asserted against Plaintiff.  On appeal, Plaintiff contends that

(1) the trial court's determination that Plaintiff had breached the implied warranty of habitability lacked adequate evidentiary support, (2) the trial court erred by determining that the fair rental value of the home as warranted was $495.00 per month, and (3) the trial court erred by failing to account for outstanding rent in calculating the amount of damages to be awarded to Plaintiff. Defendant, on the other hand, contends that the trial court erred by determining that Defendant had not established that she was entitled to relief on the grounds that Plaintiff had engaged in unfair and deceptive trade and unfair debt collection practices. After careful consideration of the parties' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court lacked jurisdiction to hear Defendant's appeal from the magistrate's judgment, that the trial court's order must be vacated for lack of jurisdiction, and that this case must be remanded to the Mecklenburg County District Court for further remand to the magistrate for reinstatement of the magistrate's original judgment.

## I. Factual Background

### A. Substantive Facts

#### 1. Plaintiff's Evidence

Cynthia Exum and her husband, Larry Exum, created Plaintiff in 1994 for the purpose of selling and leasing real property. At any given point in time, Plaintiff held from ten to twelve tracts of rental property.

Defendant lived across the street from a property located on Reliance Street, which Plaintiff had acquired in 2010. Although Defendant made inquiry of the Exums about renting the property, they initially declined to enter into such an arrangement with Defendant because they were not ready to rent the property. More specifically, the Exums wanted to have certain cosmetic work done prior to renting the property in order to get a higher monthly rent.

After asking about the property for a year, Defendant told the Exums that she needed to rent the property given that she was about to become homeless due to a pending eviction. As a favor to Defendant, the Exums agreed to rent the property. Once Defendant indicated that she could only afford to pay $350.00 per month in rent, the Exums accepted Defendant's offer given that, in their opinion, the property was in good condition and the amount of rent that Defendant proposed appropriately reflected the property's value. For that reason, the Exums told Defendant that she could rent the property in its current

condition for $350.00 or rent it for $650.00 after all repairs had been completed.[1]

After considering Plaintiff's offer, Defendant entered into a lease agreement with Plaintiff under which she agreed to rent the property for $350.00 per month from 6 July 2011 until 31 July 2012. In addition, consistently with Plaintiff's routine practice, the lease agreement between Plaintiff and Defendant provided for the payment of a $25.00 late fee. A comparison of the property in question with five other nearby properties on a per square foot basis indicated that the amount of rent that Plaintiff charged Defendant was comparable to that charged for other properties in the area.

The Exums conducted a walkthrough with Defendant prior to allowing her to occupy the property. During that process, Defendant failed to find anything that would tend to render the property unfit for human habitation. A ruptured pipe found on the premises was repaired before Defendant moved in. Although one of the windows was cracked, a replacement window was ordered and installed after Defendant occupied the property. Although

---

[1]Although the Exums believed that the $350.00 amount reflected the current value of the property, Ms. Exum asserted that, if the home had simply been repainted and the carpet replaced, the home's rental value would have been $50.00 per month higher.

Defendant acknowledged that the home was "fit," she also indicated that it needed to be "fixed."

Any repair requests that Defendant made during the time that she occupied the property were honored. For example, when Defendant made Mr. Exum aware in September 2011 that the hot water heater needed repair, he ordered another one on the same day. In the course of fixing the water heater, Mr. Exum noticed that someone had removed the fuse box cover and he made the necessary repairs. In March 2012, Defendant reported a loose toilet to Mr. Exum. After he removed the toilet, Mr. Exum noticed that the subfloor did not suffice to support the toilet, so he replaced and reattached the subfloor and related vinyl tile. In addition, the Exums repaired a broken storm door on the same date. All of these repairs were completed within a few days of notification.

Defendant was behind on her rent payments during the entire lease period. Although the Exums allowed her to make partial payments, Defendant never paid her rent on time. Plaintiff collected a $25.00 late fee from Defendant in February 2012. The Exums declined to renew Defendant's lease at the end of the initial rental period and informed Plaintiff "from time to time" that she would eventually need to move out.

In September 2012, Plaintiff initiated a summary ejectment action against Defendant based upon her failure to make required rental payments. Although Plaintiff obtained a judgment against Defendant, the Exums, instead of taking possession of the property, informed Defendant that she would be evicted if she failed to keep her rent payments current. Subsequently, Plaintiff forgave four late fees that they were entitled to assess against Defendant under the terms of the lease agreement. However, Defendant failed to pay her rent for the following month in a timely manner.

In January of 2013, Defendant asked Mr. Exum to repair the heater. Two weeks later, the heater broke again. Although the Exums informed Defendant that they could come that Saturday to make the needed repairs, Defendant never returned their phone call. As a result, Mr. Exum went by the home on the following Monday to speak with Defendant and identify a time when he could repair the heater. However, Defendant replied that she would not be home until Thursday and refused to allow Mr. Exum to enter the premises in her absence.

On Thursday, 7 February 2013, the building code inspector inspected the home. After the inspection had been completed, Defendant gave Mr. Exum permission to fix the heater, a process which Mr. Exum completed in thirty minutes. The Exums also

spoke with the inspector after the inspection had been completed. On the same date, Plaintiff notified Defendant that her month-to-month tenancy would be terminated and she would have to vacate the property within 45 days. The Exums sent the termination notice because of their belief that Defendant had purposely blocked the making of the needed heater repair and their conviction, in light of their experiences with Defendant, that a continuing landlord-tenant relationship with her would not be successful. According to the Exums, Defendant owes $1,196.93 in past due rent.

A week later, the Exums received an inspection report that contained a list of code violations, with the unrepaired heater being listed as the most critical violation. Although the report asserted that there were no smoke detectors in the home, such devices had been installed before Defendant occupied the residence. Even so, Mr. Exum installed new smoke detectors at the time that he repaired the heater. After receiving the inspection report, the Exums called Defendant to schedule the making of the necessary repairs. However, Defendant did not answer their calls. In spite of the fact that the parties' lease agreement allowed the Exums to enter the premises in order to make repairs, Defendant refused to allow Mr. Exum to enter

the home or to take photographs of it. Instead, Defendant slammed the door on Mr. Exum's foot and called her attorney.

In April and May, Plaintiff communicated with Defendant's attorney in an attempt to obtain permission to enter the residence in order to make needed repairs. After Defendant obtained a new attorney in June, the Exums received authorization to enter the residence and replaced the ceiling, which was sagging, and the windowsills, which were decaying.

### 2. Defendant's Evidence

Defendant moved into the rental property in July 2011 and made her last rent payment in March 2013. At the time of the initial walkthrough, the home was dirty and smelled of animal urine and feces. In addition, the shower was dripping, the toilet was loose and unstable, and there appeared to be a hole in the floor in the vicinity of the toilet. Defendant requested that all of these conditions be repaired. Finally, Defendant informed the Exums that the ceiling appeared to be about to cave in; however, the ceiling was not repaired until after the February 2013 inspection. Although Defendant informed the Exums that there were no smoke or carbon monoxide detectors in the home immediately after occupying the premises, this deficiency was not rectified until after the February 2013 inspection as

well. In spite of these problems, Defendant agreed to rent the property for a monthly amount of $350.00.

Defendant called the inspector in February of 2013. The only violation identified by the inspector of which Defendant had not been previously aware was the fact that the breaker box did not comply with the applicable building code. On the evening following the inspection, Mr. Exum called Defendant to ask what violations had been identified. Although Mr. Exum stated that he had already known what the inspector's findings would be, he indicated that the owner[2] would not pay for the needed repairs given that the monthly rent was only $350.00.

According to Defendant, a monthly rental payment of $350.00 did not reflect the fair market value of the home given the number of code violations that existed at the beginning of her tenancy. Had Defendant been aware of all of the code violations identified by the inspector, she would have only agreed to a $300.00 monthly rental payment. Although Defendant was charged a $25.00 late fee on multiple occasions and although the Exums claimed to have only collected one late fee, Plaintiff's ledger indicated that a late fee of $17.50 had been collected on six occasions. The first portion of any payment that Defendant made was applied to rent, with the remainder being attributed to any

---

[2]According to Defendant, the Exums consistently maintained that they did not own the property.

outstanding late fee amounts. In view of the fact that Defendant consistently failed to pay her rent on time, the late fee amounts that she was assessed were never actually collected.

## B. Procedural History

On 18 March 2013, Plaintiff filed a complaint seeking to have Defendant summarily ejected from the property on the grounds that she had held over after the expiration of her tenancy and the recovery of $750.00 in past due rent. On 1 April 2013, Defendant filed an answer in which she denied the material allegations of the complaint and asserted counterclaims for breach of the implied warranty of habitability, charging illegal rent, charging illegal fees, and engaging in unfair debt collection and unfair and deceptive trade practices. On 26 April 2013, the magistrate entered a judgment finding that Plaintiff's summary ejectment claim should be dismissed with prejudice, that Defendant had proven all of the counterclaims alleged in her responsive pleading, and that Defendant was entitled to recover a rent abatement in the amount of $5,000.00, which was the maximum that the magistrate could allow by law, and attorney's fees from Plaintiff.

On 1 May 2013, Defendant noted an appeal to the District Court from the magistrate's judgment. On 14 June 2013, Plaintiff filed a reply to the Defendant's counterclaims. The

case came on for hearing before the trial court, sitting without a jury, at the 15 July 2013 civil session of the Mecklenburg County District Court. On 13 August 2013, the trial court entered a judgment dismissing Plaintiff's claim for summary ejectment, finding in Plaintiff's favor with respect to Defendant's counterclaims for unfair debt collection and unfair and deceptive trade practices, and awarding Defendant $3,705.00 in compensatory damages for Plaintiff's breach of the implied warranty of habitability. Both parties noted appeals to this Court from the trial court's judgment.

## II. Legal Analysis

In its briefs, Plaintiff argues that the trial court erred by finding that Plaintiff breached the implied warranty of habitability, overruling Plaintiff's objection to Defendant's testimony concerning the value of the leased premises as of the date upon which her occupancy began, improperly calculating the amount of damages that should be awarded to Defendant, and failing to find that Plaintiff's summary ejectment claim had been rendered moot by Defendant's surrender of the premises while Defendant contends that the trial court erred by refusing to determine that Plaintiff had engaged in unfair and deceptive trade and unfair debt collection practices. As an initial matter, however, we must determine whether the trial court had

the authority to enter the order from which both parties have appealed.

"A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). Put another way, "[s]ubject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006). In addition, "subject matter jurisdiction may not be waived, and this Court has not only the power, but the duty to address the trial court's subject matter jurisdiction on its own motion or *ex mero motu*." *Rinna v. Steven B.*, 201 N.C. App. 532, 537, 687 S.E.2d 496, 500 (2009). Although filing an action in the District Court Division that should be brought in the Superior Court Division or vice versa does not ordinarily deprive the court in which the action is filed of subject matter jurisdiction in the absence of the existence of a statutory provision giving one or the other of these two components of the General Court of Justice exclusive jurisdiction over a particular type of claim, *see* N.C. Gen. Stat. § 7A-257 (stating that the "[f]ailure of a party to move for transfer within the time prescribed is a waiver of any objection to the division";

*Peoples v. Peoples*, 8 N.C. App. 136, 143, 174 S.E.2d 2, 7 (1970) (stating that "no order of the district court may be overturned merely because it was not the proper division to enter the order"), the same is not true of actions filed in the small claims court.

At the time that this case was pending in the trial courts, a small claim action was defined as a civil action where:

> (1) The amount in controversy, computed in accordance with [N.C. Gen. Stat. §] 7A-243, does not exceed five thousand dollars ($5,000); and
>
> (2) The only principal relief prayed is monetary, or the recovery of specific personal property, or summary ejectment, or any combination of the foregoing in properly joined claims; and
>
> (3) The plaintiff has requested assignment to a magistrate in the manner provided in this Article.

N.C. Gen. Stat. § 7A-210 (2011).[3] However, N.C. Gen. Stat. §7A-219 provides that:

> [n]o counterclaim, cross claim or third-party claim which would make the amount in controversy exceed the jurisdictional amount established by [N.C. Gen. Stat. §] 7A-210(1) is permissible in a small claim action assigned to a magistrate. No determination of fact or law in an assigned small claim

---

[3]The General Assembly increased the jurisdictional limitation applicable to small claims actions to $10,000 for all actions filed on or after 1 August 2013. 2013 N.C. Sess. L. c. 159 s. 1 & 6.

> action estops a party thereto in any subsequent action which, except for this section, might have been asserted under the Code of Civil Procedure as a counterclaim in the small claim action. Notwithstanding [N.C. Gen. Stat. §] 1A-1, Rule 13, failure by a defendant to file a counterclaim in a small claims action assigned to a magistrate, or failure by a defendant to appeal a judgment in a small claims action to district court, shall not bar such claims in a separate action.

Unlike N.C. Gen. Stat. § 7A-243, which establishes the amount in controversy necessary to make an action "proper" in either the District or Superior Court divisions, N.C. Gen. Stat. § 7A-219 absolutely bars the consideration of claims that exceed the "jurisdictional amount" in small claims court, rendering the amount in controversy applicable to actions assigned to the magistrate jurisdictional in nature. *See also Fickley v. Greystone Enters.*, 140 N.C. App. 258, 261, 536 S.E.2d 331, 333 (2000) (noting that the "plaintiffs [sought] damages in excess of $10,000, which exceeds the $3,000 jurisdictional amount in small claim actions pursuant to the provisions of N.C. Gen. Stat. § 7A-210(1)" in effect at that time).

The proper treatment of cases filed in the small claims court in which counterclaims, some of which may be compulsory, seeking damages in excess of the jurisdictional amount are asserted, has been a source of legislative concern as well. In order to address this issue, the General Assembly gave litigants

two options.  First, N.C. Gen. Stat. § 7A-220 provides that "the judge shall allow appropriate counterclaims" "[o]n appeal from the judgment of the magistrate for trial de novo before a district judge."[4]  Secondly, N.C. Gen. Stat. § 7A-219 provides that, "[n]othwithstanding [N.C. Gen. Stat. §] 1A-1, Rule 13, failure by a defendant to file a counterclaim in a small claims action assigned to a magistrate, or failure by a defendant to appeal a judgment in a small claims action to district court,

---

[4]We suggested this approach in *Fickley*, in which the defendant had filed two successful summary ejectment proceedings against the plaintiffs.  *Fickley*, 140 N.C. App. at 259, 536 S.E.2d at 332.  Instead of appealing the magistrate's decision in the summary ejectment actions, the plaintiffs instituted a separate action seeking damages for retaliatory eviction and unfair trade practices in the Superior Court.  *Id.*  In the Superior Court action, the defendant successfully asserted that the plaintiffs' claims constituted compulsory counterclaims that were barred because they had not been asserted before the magistrate.  *Id.* at 259-60, 536 S.E.2d at 333.  After agreeing that the plaintiffs' claims constituted compulsory counterclaims, *id.* at 260-61, 536 S.E.2d at 333, we noted that they could not have been properly asserted before the magistrate because the amount in controversy exceeded the jurisdictional limit applicable in small claims court actions.  *Id.* at 261, 536 S.E.2d at 333-34.  As a result of the compulsory nature of the plaintiffs' claims and the fact that they could have been litigated in an appeal from the magistrate's decision, we determined that the plaintiffs' claims were barred and affirmed the trial court's order.  *Id.* at 261-62, 536 S.E.2d at 333-34; *see also Cloer v. Smith*, 132 N.C. App. 569, 575, 512 S.E.2d 779, 782 (1999) (holding that the correct course of action for a defendant who wishes to assert a counterclaim that exceeds the jurisdictional limit applicable to matters heard in the small claims court was to "file [the] action, if at all, with her appeal from the magistrate's decision to the district court").

shall not bar such claims in a separate action."[5]  As a result, a defendant in a summary ejection action who wishes to assert counterclaims that have a value greater than the jurisdictional amount applicable in small claims court[6] may either assert their

_____

[5]Although we need not address the validity of this approach given that it was not used in this instance, another possible resolution of the problem discussed in the text of this opinion might be a request that the entire case be transferred from the small claims court to the District Court.  N.C. Gen. Stat. § 7A-257 (stating that "[a]ny party may move for transfer between the trial divisions"); see also _Stanback v. Stanback_, 287 N.C. 448, 457, 215 S.E.2d 30, 37 (1975) (providing that, "[a]lthough the case allocations of Chapter 7A are [mostly] administrative directives, a party may move, as a matter of right, for transfer of a case in accordance with the proper statutory allocation").

[6]According to N.C. Gen. Stat. § 7A-210(1), the amount in controversy in small claims actions is computed in accordance with N.C. Gen. Stat. § 7A-243.  According to N.C. Gen. Stat. § 7A-243(2), "[w]here monetary relief is prayed, the amount prayed for is in controversy unless the pleading in question shows to a legal certainty that the amount claimed cannot be recovered under the applicable measure of damages."  As a result of the fact that Defendant alleged in her counterclaims that she was entitled to receive a $4,000.00 penalty for each of Plaintiff's violations of the Fair Debt Collection Practices Act pursuant to N.C. Gen. Stat. § 75-55 and claims that "numerous" such violations occurred, it is clear from that portion of Defendant's counterclaims, without considering her additional claims for breach of the implied warranty of habitability, retaliatory eviction, the charging of illegal rents and fees, and unfair and deceptive trade practices, that the value of Defendant's counterclaims exceeded the applicable jurisdictional amount.  _Blitz v. Agean, Inc._, 197 N.C. App. 296, 310, 677 S.E.2d 1, 10 (2009) (using a similar process to calculate the value of certain claims that a plaintiff attempted to assert in small claims court), _disc. review denied_, 363 N.C. 800, 690 S.E.2d 530, (2010).  The validity of this conclusion is reinforced by the fact that the magistrate found that he or she

claims on appeal to the District Court from an adverse decision by the magistrate or assert those claims in an entirely separate action.[7] However, neither of these options was applicable in this case since Plaintiff did not appeal from the magistrate's adverse decision against it, and Defendant, instead, elected to assert counterclaims that the magistrate found exceeded applicable jurisdictional limits in the small claims court and then attempted to appeal the magistrate's judgment to the District Court despite the fact that the magistrate found in her favor and awarded her everything that he could have possibly awarded her.

---

could not award Defendant the full value of the claims that she presented at the summary ejectment hearing.

[7]In *Holloway v. Holloway*, __, N.C. App. __, __, 726 S.E.2d 198, 200 (2012), the defendant filed an unsuccessful summary ejectment action against the plaintiff. Although the defendant appealed from the judgment in the small claims court to the District Court, the jury returned a verdict in favor of the plaintiff on appeal as well. *Id.* In a subsequent damage action that the plaintiff filed against the defendant, the defendant claimed that the claims the plaintiff sought to assert should have been brought before the District Court on the theory that they were compulsory counterclaims. *Id.* at __, 726 S.E.2d at 200-01. After noting the tension between the relevant statutory provisions in cases that involved compulsory counterclaims that were actually appealed from the small claims court to the District Court, *id.* at __, 726 S.E.2d at 201-02, we held that, since the claims that the plaintiff sought to assert in the separate action had not been ripe at the time that the magistrate's judgment was appealed to the District Court, they were not required to be asserted before the District Court at that time. *Id.* at __, 726 S.E.2d at 202.

"After final disposition before the magistrate, the sole remedy for an aggrieved party [to a small claims action] is appeal for trial de novo before a district court judge or a jury." N.C. Gen. Stat. § 7A-228(a). As a result, the only party entitled to invoke the District Court's jurisdiction following a decision by the magistrate in small claims court is an "aggrieved party." Although neither this Court nor the Supreme Court has addressed the issue of what constitutes an "aggrieved party" for purposes of N.C. Gen. Stat. § 7A-228(a), the Supreme Court has defined a "person aggrieved" in the appellate context as a person "'adversely affected in respect of legal rights, or suffering from an infringement or denial of legal rights.'" *In re Halifax Paper Co.*, 259 N.C. 589, 595, 131 S.E.2d 441, 446 (1963) (quoting 3 C.J.S. *Aggrieved* § 333 (1936)). As a result of the fact that Defendant submitted her counterclaims for the magistrate's consideration in small claims court and received the maximum amount of relief available in that forum, we are unable to see how any of her legal rights were adversely affected. Admittedly, as Defendant notes, "a party who prevails at trial may appeal from a judgment that is only partly in its favor or is less favorable than the party thinks it should be." *Casado v. Melas Corp.*, 69 N.C. App. 630, 635, 318 S.E.2d 247, 250 (1984) (citing *New Hanover Cnty. v.*

*Burton*, 65 N.C. App. 544, 547, 310 S.E.2d 72 74 (1983), and *McCullock v. N.C. R.R. Co.*, 146 N.C. 316, 320, 59 S.E. 882, 884 (1907)). However, this principal applies in situations in which the court had the authority to grant the additional relief that the plaintiff sought to obtain rather than in situations in which the plaintiff requested the court to grant more relief than the court had power to award. In addition, Defendant argues that Plaintiff's challenge to the trial court's jurisdiction over this case ignores the fact that a tenant is required to assert the breach of the implied warranty of habitability as a defense in the summary ejectment action. Patrick K. Hetrick & James B. McLaughlin, *Webster's Real Estate Law in North Carolina* § 6.04[3] (6th ed. 2012) (stating that a "tenant who is in default in making rent payments can raise the landlords' breach of the statutory warranty of habitability by way of recoupment, counterclaim, defense, or setoff"). However, Defendant's argument overlooks the fact that the use of a breach of the warranty of habitability as a defense in a summary ejectment action does not preclude the assertion of that breach as a counterclaim on appeal to the District Court for a trial *de novo* in the event that the landlord prevails before the magistrate or in a separate action. As a result, neither of Defendant's attempts to explain why a party who pleads damages

in excess of the amount available in a small claims action and then obtains all of the relief that he or she is able to obtain in the small claims court is an "aggrieved party" with standing to seek additional relief on appeal to the District Court.

As a result, the record clearly reflects that Defendant had no standing to appeal the magistrate's judgment in small claims court. In view of that fact, we have no choice except to conclude that the District Court had no authority to hear and decide this case, a determination that renders the District Court's judgment void, requires us to vacate the District Court's judgment, *e.g.*, *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956) (holding that "[a] judgment is void, when there is a want of jurisdiction by the court over the subject matter of the action"), and necessitates a conclusion that the judgment entered by the magistrate was never properly challenged. As a result, the trial court's judgment must be vacated and this case remanded to the District Court for further remand to the small claims court for the reinstatement of the magistrate's judgment.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court lacked jurisdiction over this case. As a result, the trial court's order should be, and hereby is, vacated and

this case should be, and hereby is, remanded to the Mecklenburg County District Court for further remand to the magistrate with instructions that the original magistrate's judgment be reinstated.

VACATED and REMANDED.

Judges GEER and STEPHENS concur.