IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-337

No. COA21-415

Filed 17 May 2022

Mecklenburg County, No. 20 CVS 5985

MICHAEL LAKINS, Plaintiff,

v.

THE WESTERN NORTH CAROLINA CONFERENCE OF THE UNITED METHODIST CHURCH (a/k/a WESTERN NORTH CAROLINA CONFERENCE); and THE CHILDREN'S HOME, INCORPORATED (a/k/a THE CHILDREN'S HOME, a/k/a THE CROSSNORE SCHOOL & CHILDREN'S HOME, a/k/a CROSSNORE CHILDREN'S HOME), Defendants.

Appeal by defendants, by writ of certiorari, from order entered 22 March 2021 by Judge Lisa C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 February 2022.

*Janet Janet & Suggs, LLC, by Richard Serbin and Matthew White, for plaintiff-appellee.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Kelly S. Hughes, and Ashley P. Cuttino, pro hac vice, for defendant-appellant The Western North Carolina Conference of the United Methodist Church (a/k/a Western North Carolina Conference).*

*Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidus, G. Gray Wilson, and D. Martin Warf, for defendant-appellant The Children's Home, Incorporated (a/k/a The Children's Home, a/k/a The Crossnore School & Children's Home, a/k/a Crossnore Children's Home).*

ZACHARY, Judge.

¶ 1     Defendants The Western North Carolina Conference of the United Methodist

Church ("UMC") and The Children's Home, Incorporated ("TCH") appeal from the trial court's order granting Plaintiff Michael Lakins's motion to transfer Defendants' motions to dismiss, which raised constitutional challenges to a portion of the Sexual Assault Fast Reporting and Enforcement Act, to a three-judge panel of the Wake County Superior Court pursuant to N.C. Gen. Stat. §§ 1-267.1(a1), 1-81.1(a1), and 1A-1, Rule 42(b)(4) (2021) (collectively, the "three-judge panel provisions"). After careful review, we vacate and remand to the trial court for further proceedings.

## *Background*

¶ 2    The Sexual Assault Fast Reporting and Enforcement Act ("the Act") was enacted in 2019 to "strengthen and modernize" our sexual assault laws. *See* An Act to Protect Children from Sexual Abuse and to Strengthen and Modernize Sexual Assault Laws, S.L. 2019-245, 2019 N.C. Sess. Laws 1231. Among other revisions, the Act extended to ten years the statute of limitations for a civil action based on sexual abuse suffered while a minor. *Id.* § 4.1, 2019 N.C. Sess. Laws at 1234; *see* N.C. Gen. Stat. §§ 1-17(d), 1-52(16). Further, it provided that "a plaintiff may file a civil action within two years of the date of a criminal conviction for a related felony sexual offense against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age." S.L. 2019-245, § 4.1, 2019 N.C. Sess. Laws at 1234; *see* N.C. Gen. Stat. § 1-17(e). The Act also contained a provision, effective from 1 January 2020 to 31 December 2021, that revived "any civil action for child sexual abuse otherwise

time-barred under G.S. 1-52 as it existed immediately before" the Act's passage. *See* S.L. 2019-245, § 4.2(b), 2019 N.C. Sess. Laws at 1235 (the "revival section").

¶ 3     On 15 April 2020, Plaintiff filed a complaint against UMC and TCH, an orphanage that Plaintiff alleged in his complaint was opened and operated by UMC. Plaintiff sought damages for injuries resulting from sexual abuse by his "house parents," which allegedly occurred at TCH when Plaintiff was a minor in the 1970s and residing at the orphanage. In his complaint, Plaintiff asserted claims for negligence; negligent hiring, retention, and supervision; breach of fiduciary duty; and constructive fraud. Plaintiff also maintained that his otherwise time-barred claims were revived by the Act.

¶ 4     Defendants UMC and TCH filed their respective motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on 26 and 30 June 2020, challenging, *inter alia*, the constitutionality of the Act's revival section as applied to Defendants. UMC further asserted that the claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

¶ 5     On 15 December 2020, Plaintiff filed a motion to transfer Defendants' motions to dismiss challenging the Act's constitutionality to a three-judge panel of the Wake County Superior Court, pursuant to the three-judge panel provisions. On 22 February 2021, Plaintiff's motion to transfer came on for hearing in Mecklenburg County Superior Court. On 22 March 2021, the trial court entered an order granting

Plaintiff's motion to transfer, determining that "[t]he constitutional challenges contained in [D]efendants['] respective motions to dismiss under Rule 12(b)(6) raise facial challenges" to the constitutionality of the Act. The trial court declined to rule on Defendants' remaining unnoticed and unscheduled Rule 12(b)(6) motions and UMC's unnoticed and unscheduled Rule 12(b)(1) motion, and ordered "a stay of these proceedings pending a ruling from the three-judge panel." Defendants timely filed notices of appeal.

### *Grounds for Appellate Review*

As a preliminary matter, we address this Court's jurisdiction to review Defendants' appeals of the trial court's order granting Plaintiff's motion to transfer. Plaintiff maintains that Defendants' appeals should be dismissed as interlocutory. Defendants concede that the appeals are interlocutory, but each initially contended that the trial court's order affected substantial rights and therefore was immediately appealable.[1] In the event that this Court determines that the trial court's orders do not affect a substantial right, Defendants have filed separate petitions for writ of

---

[1] As discussed below, during the pendency of this case, this Court addressed the substantial right that TCH initially alleged was affected by the trial court's order in *Cryan v. National Council of Young Men's Christian Association of the United States of America*, 2021-NCCOA-612, ¶ 16. TCH candidly admitted in its reply to Plaintiff's motion to dismiss this appeal that *Cryan* "foreclosed" its substantial right argument. Accordingly, TCH now relies upon its petition for writ of certiorari as its sole avenue for invoking this Court's jurisdiction.

certiorari, asking this Court to assert jurisdiction and address the merits of their arguments.

## I. *Interlocutory Appeals*

Generally, this Court only hears appeals from final judgments. *See* N.C. Gen. Stat. § 7A-27(b)(1)–(2). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). By contrast, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381. Because an interlocutory order is not yet final, with few exceptions, "no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge[.]" *N.C. Consumers Power v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974).

Nonetheless, an interlocutory order may be immediately appealed if "the trial court certifies, pursuant to N.C.G.S. § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal[,]" *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009), or if "the order affects some substantial right and will work injury to [the] appellant if not corrected before appeal from final judgment[,]" *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (citation

omitted); *accord* N.C. Gen. Stat. §§ 1-277(b), 7A-27(b)(3)(a). Our Supreme Court has defined a "substantial right" as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved and protected by law: a material right." *Oestreicher v. Am. Nat'l Stores Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (citation omitted). The burden is on the appellant to affirmatively establish this Court's jurisdiction to accept an interlocutory appeal. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994).

¶ 9        In the instant case, the trial court did not certify for immediate appellate review the order granting Plaintiff's motion to transfer, pursuant to Rule 54(b). *See Turner*, 363 N.C. at 558, 681 S.E.2d at 773. Nevertheless, Defendants initially argued that the interlocutory order from which they appeal affects a substantial right and should be immediately reviewed.

¶ 10        Originally, both Defendants contended that the trial court's order affected their substantial right to have the case heard in the proper venue. However, as TCH promptly acknowledged in its reply to Plaintiff's motion to dismiss this appeal as interlocutory, this Court recently addressed the issue of whether the transfer of a motion to dismiss to a three-judge panel of Wake County Superior Court implicated a substantial right. *Cryan*, 2021-NCCOA-612, ¶ 16.

¶ 11 In *Cryan*, the defendant argued that appellate jurisdiction was proper in this Court because the trial court's order changed the venue of the case, thereby affecting a substantial right. *Id.* ¶ 10. Although the defendant was "correct in its contention that the right to venue established by statute is a substantial right[,]" the *Cryan* Court concluded that an order transferring a defendant's motion to dismiss to a three-judge panel of the Wake County Superior Court does "not grant, deny, change, or otherwise affect venue, and therefore d[oes] not affect a substantial right." *Id.* ¶ 13. Thus, in the instant case, Defendants' argument to the contrary is unavailing.

¶ 12 UMC presents an alternative substantial-right argument: UMC posits that the trial court effectively denied its Rule 12(b)(1) motion by holding the motion in abeyance, thus threatening UMC's First Amendment right to immunity "from judicial meddling in ecclesiastical disputes" and warranting immediate appeal as a matter of subject-matter jurisdiction.

¶ 13 Indeed, there are numerous appellate decisions holding that, although interlocutory, the denial of a Rule 12(b)(1) motion to dismiss grounded in the ecclesiastical-entanglement doctrine is immediately appealable. *See, e.g.*, *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007); *Doe v. Diocese of Raleigh*, 242 N.C. App. 42, 46–47, 776 S.E.2d 29, 34 (2015). However, unlike those cases, in the present case the trial court has not yet ruled on whether the ecclesiastical-entanglement doctrine provides UMC with immunity from this suit; UMC's Rule

12(b)(1) motion remains pending. *See* N.C.R. App. P. 10(a)(1) ("It is . . . necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion" in order to preserve an issue for appellate review.). Thus, the ecclesiastical-entanglement doctrine cannot provide the basis for the substantial right needed to confer jurisdiction upon this Court to enable our review of UMC's interlocutory appeal.

¶ 14        Accordingly, and consistent with our precedent, we allow Plaintiff's motion to dismiss this appeal. However, this does not end our inquiry. We now turn to Defendants' petitions for writ of certiorari requesting review of the trial court's order.

### II.    *Petitions for Writ of Certiorari*

¶ 15        In their petitions, Defendants maintain that the trial court erred in finding that their motions to dismiss challenged the facial validity of the Act, prompting an erroneous decision to transfer to a three-judge panel; hence, it is proper and in the interest of justice for this Court to issue a writ of certiorari. For the reasons explained below, we allow Defendants' petitions for writ of certiorari to permit review of Defendants' arguments.

¶ 16        Pursuant to Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure, this Court may in its discretion issue a writ of certiorari "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals . . . when no right of appeal from an interlocutory order exists[.]" N.C.R. App. P. 21(a)(1).

Such "appropriate circumstances" exist when "review will serve the expeditious administration of justice or some other exigent purpose." *Amey v. Amey*, 71 N.C. App. 76, 79, 321 S.E.2d 458, 460 (1984) (citation omitted). Further, the writ of certiorari "is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959), *cert. denied*, 362 U.S. 917, 4 L. Ed. 2d 738 (1960). "A petition for the writ must show merit or that error was probably committed below." *Id.*

For the reasons that follow, we conclude that Defendants' appeals present the appropriate circumstances contemplated by Rule 21(a)(1), and that Defendants have shown the requisite "good and sufficient cause" for this Court to issue the writ. *Id.* Thus, in our discretion, we allow Defendants' petitions for writ of certiorari pursuant to Rule 21(a)(1), and proceed to the merits of their appeals.

## *Discussion*

On appeal, Defendants argue that the trial court erred by concluding that they raised facial constitutional challenges to the Act. UMC further argues that the trial court erred by granting Plaintiff's motion to transfer prior to hearing UMC's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

### I. *Standard of Review*

Under the three-judge panel provisions, when a party properly advances a facial challenge to the constitutionality of a statute, the trial court lacks jurisdiction

to rule on the facial challenge "because sole jurisdiction to decide that matter resides with the Superior Court of Wake County, and the matter is required to be heard and determined by a three-judge panel of the Superior Court of Wake County," as provided by N.C. Gen. Stat. § 1-267.1(b2). *Holdstock v. Duke Univ. Health Sys., Inc.*, 270 N.C. App. 267, 281, 841 S.E.2d 307, 317 (2020) (citation and internal quotation marks omitted). The trial court's order thus raises issues concerning subject-matter jurisdiction and statutory construction, each of which this Court reviews de novo. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). When conducting de novo review, the appellate court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and internal quotation marks omitted).

II.     *The Three-Judge Panel Provisions*

The three-judge panel provisions create special procedures for hearing facial challenges to the constitutionality of certain acts of our General Assembly.

Section 1-267.1(a1) provides that, except for actions challenging an act that apportions or redistricts state legislative or congressional districts, "any facial challenge to the validity of an act of the General Assembly shall be transferred pursuant to G.S. 1A-1, Rule 42(b)(4), to the Superior Court of Wake County and shall be heard and determined by a three-judge panel of" that court. N.C. Gen. Stat. § 1-

267.1(a1). Section 1-81.1(a1) similarly provides that venue for such facial challenges "lies exclusively with the Wake County Superior Court" in accordance with §§ 1-267.1(a1) and 1A-1, Rule 42(b)(4). *Id.* § 1-81.1(a1).

¶ 22     Rule 42(b)(4)—which "is written in such a manner that not all its requirements are clear on a first reading[,]" *Holdstock*, 270 N.C. App. at 272, 841 S.E.2d at 312—sets forth the procedural requirements for the transfer of a facial challenge to an act of the General Assembly to a three-judge panel. Rule 42(b)(4) provides, in pertinent part:

> Pursuant to G.S. 1-267.1, any facial challenge to the validity of an act of the General Assembly . . . shall be heard by a three-judge panel in the Superior Court of Wake County if a claimant raises such a challenge in the claimant's complaint or amended complaint in any court in this State, or if such a challenge is raised by the defendant in the defendant's answer, responsive pleading, or within 30 days of filing the defendant's answer or responsive pleading. In that event, the court shall, on its own motion, transfer that portion of the action challenging the validity of the act of the General Assembly to the Superior Court of Wake County for resolution by a three-judge panel if, after all other matters in the action have been resolved, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any matters in the case. The court in which the action originated shall maintain jurisdiction over all matters other than the challenge to the act's facial validity. For a motion filed under Rule 11 or Rule 12(b)(1) through (7), the original court shall rule on the motion, however, it may decline to rule on a motion that is based solely upon Rule 12(b)(6). If the original court declines to rule on a Rule 12(b)(6) motion, the motion shall be decided by the three-

judge panel. The original court shall stay all matters that are contingent upon the outcome of the challenge to the act's facial validity pending a ruling on that challenge and until all appeal rights are exhausted.

N.C. Gen. Stat. § 1A-1, Rule 42(b)(4).

### III.     *Facial or As-Applied Challenge*

Prior to invoking the three-judge panel provisions, "it is the duty of the trial court to first determine whether [the party] raised a facial challenge" to the validity of a statute in accordance with Rule 42(b)(4). *Holdstock*, 270 N.C. App. at 281, 841 S.E.2d at 317 (internal quotation marks omitted). "A facial challenge is an attack on a statute itself as opposed to a particular application." *Id.* at 272, 841 S.E.2d at 311 (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 415, 192 L. Ed. 2d 435, 443 (2015)). "[A]n as-applied challenge represents a [party]'s protest against how a statute was applied in the particular context in which [the party] acted or proposed to act, while a facial challenge represents a [party]'s contention that a statute is incapable of constitutional application in any context." *LeTendre v. Currituck Cty.*, 259 N.C. App. 512, 534, 817 S.E.2d 73, 89 (2018), *appeal dismissed, supersedeas and disc. review denied*, 372 N.C. 54, 822 S.E.2d 641 (2019).

On appeal, Defendants argue that the trial court erred by concluding that they raised facial, rather than as-applied, challenges to the constitutionality of the Act in their motions to dismiss. For example, UMC alleged, in pertinent part:

> 1. Plaintiff's claims are time-barred. While he alleges that this is a revival action brought pursuant to [the Act], the Act does not salvage Plaintiff's untimely claims. The Act impermissibly amends preexisting (and expired) limitations and repose periods. *See* N.C. Gen. Stat. §§ 1-17(e), 1-52(5), (16), and (19), and 1-56 (2019). As such, these sections of the Act should be declared unconstitutional *as applied to* [*UMC*] *under the facts as alleged in this case*, and . . . Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) as barred under the statutes of limitations and repose.

> 2. The plain language of the statutory amendments establishes that the Act reopens any statutes of limitations or repose to bring claims against the alleged abusers <u>only</u> for the assault and abuse, and not against third parties for ancillary claims, and so Plaintiff's claims against [UMC] fail.

> 3. Plaintiff makes no allegation that either of his alleged abusers has a criminal record, and so he cannot meet a condition precedent to pleading his claims under N.C. Gen. Stat. § 1-17(e).

(First emphasis added).

¶ 25    Similarly, in its motion to dismiss, TCH moved the trial court "for an order decreeing that the General Assembly's 2019 amendments" to N.C. Gen. Stat. §§ 1-52 and 1-56(b) "are unconstitutional *as applied to this defendant*[.]" (Emphasis added). In support of its motion to dismiss, TCH alleged, in pertinent part:

> 1. Plaintiff's claims are time barred and thus fail as a matter of law. The General Assembly amended portions of, *inter alia*, N.C. Gen. Stat[.] §§ . . . 1-52 and 1-56 in [the Act]. These statutory amendments purport to revive civil claims that were otherwise time barred under the preexisting statutes of limitation and repose.

2.      In this case, the General Assembly's amendments to [N.C. Gen. Stat.] §§ 1-52 and 1-56(b), are *unconstitutional only as applied to this defendant on the particular facts of this case* because they contravene fundamental state substantive due process requirements enshrined in N.C. CONST. Art. 1, § 19 and N.C. CONST. Art. IV, § 13(2).

3.      Specifically, under these portions of the North Carolina Constitution, [TCH] has a vested constitutional right to freedom from civil liability after an existing statutory limitation or repose period on claims has already expired. Here, the preexisting three-year limitation and ten-year repose periods applicable to [P]laintiff's claims filed against [TCH] have long since expired. Even liberally construing the complaint, that pleading conclusively establishes that the events alleged therein occurred between 1970 and 1973. Such previously terminated civil liability cannot be revived now by an act of the General Assembly without violating North Carolina's substantive due process protections, particularly when such revival attempts to reinstate claims against [TCH] that are almost fifty years old.

4.      Accordingly, [P]laintiff's claims against [TCH] are barred by the applicable statutes of limitations and repose codified in N.C. Gen. Stat. §§ 1-52(5), (16), (19), and 1-56(a) prior to the enactment of the legislation *which is subject to this applied state constitutional challenge*.

**WHEREFORE,** [TCH] respectfully prays the Court for an order decreeing that the 2019 amendments to N.C. Gen. Stat. §§ 1-52 (Session Laws 2019-245 s. 4(b)[)] and 1-56(b) are unconstitutional *as applied to* [*TCH*] *in this case* . . . .

(Second and third emphases added).

¶ 26 In each of these motions to dismiss, Defendants repeatedly state that their constitutional challenges are as-applied. UMC argued that the relevant provisions "of the Act should be declared unconstitutional *as applied to* [*UMC*] *under the facts as alleged in this case*," and specifically contended that "the Act reopens any statutes of limitations or repose to bring claims against the alleged abusers <u>only</u> for the assault and abuse, and not against third parties for ancillary claims[.]" (First emphasis added). UMC thus did not contend that the Act "is incapable of constitutional application in any context." *LeTendre*, 259 N.C. App. at 534, 817 S.E.2d at 89 (citation omitted). Rather, UMC argued "against how [the Act] was applied in the particular context" of Plaintiff's claims. *Id.* (citation omitted).

¶ 27 Similarly, TCH moved the trial court to dismiss on the grounds that the Act was "unconstitutional as applied to this defendant[.]" TCH further argued that the Act was "*unconstitutional only as applied to this defendant on the particular facts of this case*" and explained its specific objections to Plaintiff's invocation of the Act as applied to the facts of this case. As with UMC, TCH plainly argued "against how [the Act] was applied in the particular context" of the present case and did not assert that the Act was "incapable of constitutional application in any context." *Id.* (citation omitted).

¶ 28 Nevertheless, the trial court concluded that "[t]he constitutional challenges contained in [D]efendants['] respective motions to dismiss under Rule 12(b)(6) raise

facial challenges" to the Act. Yet in *Cryan*—which was released *after* the trial court entered its transfer order in this case and which opinion the court accordingly did not have the benefit of reviewing when it ruled on this issue—this Court reversed a trial court's determination that a defendant had raised a facial challenge to N.C. Gen. Stat. § 1-17(e) where the defendant "d[id] not challenge the authority of the General Assembly to create disabilities as a means of extending the time during which a sufferer of sexual abuse may sue. Rather, [the d]efendant only challenge[d] subsection (e)'s application to claims *that had already become time-barred* prior to its enactment in 2019." *Cryan*, 2021-NCCOA-612, ¶ 22.

¶ 29        Defendants urge us to conclude that the constitutional challenges raised in their motions to dismiss were as-applied challenges and not facial challenges. However, to the extent that this Court's opinion in *Cryan* provides new and additional insight on this question of law, the proper disposition is for our Court to vacate the trial court's order and remand for the trial court's reconsideration in light of *Cryan*. *See Blitz v. Agean, Inc.*, 197 N.C. App. 296, 312, 677 S.E.2d 1, 11 (2009) ("Where a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light." (citation omitted)), *disc. review and cert. denied*, 363 N.C. 800, 690 S.E.2d 530 (2010). Accordingly, we vacate the trial court's order and remand for reconsideration of Plaintiff's motion to transfer in light of *Cryan*.

### IV. *UMC's Rule 12(b)(1) Motion*

Below, UMC moved to dismiss Plaintiff's action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, but did not notice or schedule it for hearing. In its appellate brief to this Court, UMC explains that "for a judge or a jury to determine what, if any, employment relationship existed" between UMC and the individuals who Plaintiff alleges abused him as a minor, that judge or jury "will have to engage in examinations of *The Book of Discipline*, religious doctrine, doctrines and practices regarding ordination of clergy, Christian principles, and governing structures and processes of The United Methodist Church in 1970."

Because the trial court declined to rule on UMC's Rule 12(b)(1) motion, we express no opinion on the merits of UMC's ecclesiastical-entanglement argument. As UMC acknowledges, the merits of this argument are "not the point at this juncture." Rather, UMC merely argues on appeal that, as a challenge to the trial court's subject-matter jurisdiction to even hear this action, its Rule 12(b)(1) motion is "not contingent upon the outcome of the challenge to the act's facial validity." *Holdstock*, 270 N.C. App. at 278, 841 S.E.2d at 315 (citation omitted). Accordingly, UMC argues that the trial court was required to resolve its Rule 12(b)(1) motion prior to transferring any portion of this matter pursuant to Rule 42(b)(4). We agree.

Once a trial court determines that a party has sufficiently raised a facial constitutional challenge in order to invoke the three-judge panel provisions, Rule

42(b)(4) sets forth the procedure that the trial court must follow in transferring the facial challenge to a three-judge panel of the Wake County Superior Court. Under Rule 42(b)(4), the trial court "shall, on its own motion, transfer that portion of the action" raising the facial challenge "if, *after all other matters in the action have been resolved*, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any matters in the case." N.C. Gen. Stat. § 1A-1, Rule 42(b)(4) (emphasis added).

¶ 33       Rule 42(b)(4) thus "requires [that] the transfer for the facial constitutional challenge should not happen until after a trial on the other unaffected claims in the lawsuit." *Hull v. Brown*, 2021-NCCOA-525, ¶ 12 (citation and internal quotation marks omitted). " 'All other matters' under Rule 42(b)(4) means 'all matters that are not contingent upon the outcome of the challenge to the act's facial validity.' " *Holdstock*, 270 N.C. App. at 278, 841 S.E.2d at 315 (citation omitted).

¶ 34       The ecclesiastical-entanglement doctrine is rooted in the First Amendment to the Constitution of the United States. "The Establishment Clause and the Free Exercise Clause of the First Amendment prohibit any 'law respecting an establishment of religion, or prohibiting the free exercise thereof.' " *Doe*, 242 N.C. App. at 47, 776 S.E.2d at 34 (quoting U.S. Const. amend. I). "As applied to the states through the Fourteenth Amendment, the First Amendment also restricts action by state governments and the servants, agents and agencies, of state governments." *Id.*

(citation omitted). "As such, the civil courts of North Carolina are prohibited from becoming entangled in ecclesiastical matters and have no jurisdiction over disputes which require an examination of religious doctrine and practice in order to resolve the matters at issue." *Id.* (citation and internal quotation marks omitted). This prohibition arises under both the Free Exercise and Establishment Clauses, as "(1) by hearing religious disputes, a civil court could influence associational conduct, thereby chilling the free exercise of religious beliefs; and (2) by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks establishing a religion." *Id.* at 48, 776 S.E.2d at 34 (citation and internal quotation marks omitted).

¶ 35 Accordingly, the ecclesiastical-entanglement doctrine potentially implicates the subject-matter jurisdiction of the courts of this state in this case. It is a "universal principle as old as the law" that the proceedings of a court without subject-matter jurisdiction "are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). "Put another way, subject[-]matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." *4U Homes & Sales, Inc. v. McCoy*, 235 N.C. App. 427, 433, 762 S.E.2d 308, 312 (2014) (citation and internal quotation marks omitted).

¶ 36 The issue of the trial court's subject-matter jurisdiction over this case is "not contingent upon the outcome of the challenge to the act's facial validity." *Holdstock*,

270 N.C. App. at 278, 841 S.E.2d at 315 (citation omitted). Instead, the issue of the facial challenge is arguably contingent upon the outcome of the Rule 12(b)(1) motion: if the trial court determines that UMC's ecclesiastical-entanglement arguments have merit, the trial court has the "duty to take notice of the defect and stay, quash or dismiss the suit[,]" at least with respect to UMC. *Burgess*, 262 N.C. at 465, 137 S.E.2d at 808.

¶ 37 Further, Rule 42(b)(4) itself explicitly envisions Rule 12(b) motions as not being matters "contingent upon the outcome of the challenge to the act's facial validity." *Holdstock*, 270 N.C. App. at 278, 841 S.E.2d at 315 (citation omitted). Discussing the procedure for "all matters other than the challenge to the act's facial validity[,]" Rule 42(b)(4) states:

> For a motion filed under Rule 11 or Rule 12(b)(1) through (7), the original court shall rule on the motion, however, it may decline to rule on a motion that is based solely upon Rule 12(b)(6). If the original court declines to rule on a Rule 12(b)(6) motion, the motion shall be decided by the three-judge panel.

N.C. Gen. Stat. § 1A-1, Rule 42(b)(4).

¶ 38 "Under the doctrine of *expressio unius est exclusio alterius*, when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list." *Cooper v. Berger*, 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018) (citation omitted). Rule 42(b)(4) specifically authorizes the trial court to decline to rule on a

motion that is based solely upon Rule 12(b)(6), in which case, "the motion shall be decided by the three-judge panel." N.C. Gen. Stat. § 1A-1, Rule 42(b)(4). By implication, however, Rule 42(b)(4) does *not* authorize a trial court to decline to rule on a Rule 12(b)(1) motion, as the trial court did here. *See id.*

¶ 39        The trial court has neither heard nor ruled on UMC's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction; instead, the present appeal is from the trial court's order on Plaintiff's motion to transfer Defendants' motions to dismiss. However, when the trial court concluded that Defendants sufficiently raised facial challenges to warrant the invocation of the three-judge panel provisions, under the order of operations established by Rule 42(b)(4) and this Court's precedents in *Hull* and *Holdstock*, the trial court should have ruled on UMC's Rule 12(b)(1) motion prior to ordering any transfer. *See Hull*, 2021-NCCOA-525, ¶ 12; *Holdstock*, 270 N.C. App. at 278, 841 S.E.2d at 315.

## *Conclusion*

¶ 40        For the foregoing reasons, we vacate the trial court's transfer order and remand this case to the trial court for reconsideration of Plaintiff's motion to transfer, in light of *Cryan*. On remand, the trial court shall also consider UMC's Rule 12(b)(1) motion to dismiss as a threshold issue with regard to UMC.

VACATED AND REMANDED.

Judges COLLINS and CARPENTER concur.